[Civ. No. 22782. Fourth Dist., Div. One. Aug. 24, 1982.]

SAM L. WILHITE, JR., Plaintiff and Respondent, v.
HENRY W. CALLIHAN et al., Defendants and Appellants.

COUNSEL

Gordon H. Rubin for Defendants and Appellants.

Jenkins & Perry and Jerome E. Eggers for Plaintiff and Respondent.

## OPINION

**STANIFORTH, J.**—After our original opinion was filed on July 17, 1981,[1] the Supreme Court granted appellant's petition for hearing, then retransferred the cause to our court for consideration in light of *Dawn Investment Co., Inc.* v. *Superior Court* (1982) 30 Cal.3d 695 [180 Cal.Rptr. 332, 639 P.2d 974]. Upon due consideration, we conclude the same result is mandated.

The Callihans appeal a permanent injunction barring their nonjudicial foreclosure of a second deed of trust on real property purchased by Sam L. Wilhite, Jr. (Wilhite). The Callihans also complain of attorney fees granted to Wilhite. The appeal turns on the right of the Callihans —who claim "noninstitutional" lender status—to enforce a "due-on-sale"[2] clause.

### FACTS

Henry W. Callihan with the assistance of his wife Lucille G. Callihan manage an investment portfolio. A substantial portion of the portfolio consists of second trust deed loans. The Callihans have made at least 20 loans secured by trust deeds in the last 5 years. Many of the loans were made through San Diego Home Loan Corporation (SDHLC), trustee on the trust deed and collector of installments due on the loans.

On September 23, 1977, Callihan loaned Mr. and Mrs. Rogers $5,000 in return for a second deed of trust encumbering the Rogers' residence. The loan was to be paid off in three years and the terms included a prepayment penalty and a "due-on-sale" clause.

On February 15, 1978, when the loan was in default, the Rogers sold and conveyed title in the residence, subject to the second deed of trust, to Wilhite. Wilhite cured the default and continued to make all the installment payments due under the loan. In September 1979, SDHLC notified the Callihans the Rogers had sold the encumbered property, and therefore the balance of the debt, $2,132.55, was due.

---

[1](Cal.App. (hg. granted Oct. 2, 1981).)

[2]The "due-on-sale clause" in issue here provides in part: "[S]hould the [subject real property] ... be conveyed by trustor ... all sums secured shall ... become immediately due and payable."

A notice of default on the second deed of trust was filed on October 18, 1979. Wilhite promptly sought a permanent injunction from the superior court to bar foreclosure proceedings. The trial court found Wilhite cured the default in installment payments due on the note, was more creditworthy than the Rogers, neither committed nor permitted any waste, and the real property had appreciated in market value. The trial court characterized the Callihans as "private" lenders. The Callihans were permanently enjoined from foreclosing on the security and the court awarded attorney fees to Wilhite in the sum of $2,623.75. Pending the Callihans' appeal, the note was paid off on time and in full.

DISCUSSION

I

Restraints on alienation created by "due-on-sale clauses" have been recently discussed in the United States Supreme Court case *Fidelity Federal Savings and Loan Association* v. *de la Cuesta* (June 28, 1982) 458 U.S. 141 [73 L.Ed.2d 664, 102 S.Ct. 3014] and two California Supreme Court cases, *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970], and *Dawn Investment Co., Inc.* v. *Superior Court, supra*, 30 Cal.3d 695. We examine the precise holdings in each case and review the development of the law involving due-on-sale clauses to determine which is applicable here.

In *Fidelity Federal Savings and Loan Association* v. *de la Cuesta, supra*, the United States Supreme Court considered a regulation enacted by the Federal Home Loan Bank Board (Board) providing a federal savings and loan association continues to have the power to include in its loan instrument a due-on-sale clause. The United States Supreme Court held: "[T]he Board intended to pre-empt conflicting state restrictions on due-on-sale practices like the California Supreme Court's *Wellenkamp* doctrine.

"Our inquiry ends there. Accordingly, we hold that the Board's due-on-sale regulation bars application of the *Wellenkamp* rule to federal savings and loan associations. [Fn. omitted.]" (458 U.S. 141, 170 [73 L.Ed.2d 664, 686].) The *de la Cuesta* holding does not assist reso-

lution of the instant case because the Board regulation only affects federal savings and loan associations. The Callihans were characterized by the trial court as "private lenders." We next examine *Wellenkamp* and *Dawn Investment* rules as applied to the facts before us.

Before *Dawn Investment, supra,* was issued, the Supreme Court held in *Wellenkamp* v. *Bank of America, supra,* 21 Cal.3d 943, in the case of a California *institutional* lender: "[A] due-on-clause contained in a promissory note or deed of trust cannot be enforced upon the occurence [*sic*] of an outright sale unless the lender can demonstrate that enforcement is reasonably necessary to protect against impairment to its security or the risk of default." (*Id.,* at p. 953; fns. omitted.) But the Supreme Court limited the *Wellenkamp* holding: "In the instant case the party seeking enforcement of the due-on clause is an institutional lender. We limit our holding accordingly. We express no present opinion on the question whether a private lender, including the vendor who takes back secondary financing, has interests which might inherently justify automatic enforcement of a due-on clause in his favor upon resale." (*Id.,* at p. 952, fn. 9.)

*Dawn Investment, supra,* followed and extended the *Wellenkamp* rule to noninstitutional lenders, such as the Callihans.

The California law before *Dawn Investment* and *Wellenkamp,* began with *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311 [38 Cal.Rptr. 505, 392 P.2d 265] (overruled in part by *Wellenkamp, supra,* 21 Cal.3d at p. 953), where the Supreme Court held only *unreasonable* restraints were proscribed by Civil Code section 711.[3] The reasonableness of a due-on-sale clause was determined by analyzing its necessity in preventing impairment of the lender's security. In that case, the Supreme Court found the due-on-sale clause reasonable and enforceable.

A due-on-sale clause providing for acceleration of a loan upon *encumbrance* of property was denied enforcement by the court in *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113]. The suspect clause was found to involve significant restraints on alienation such as to preclude enforcement of the clause unless the lender could show enforcement was necessary to protect its security. (*Id.,* at p. 881.)

---

[3]Section 711 reads: "Conditions restraining alienation, when repugnant to the interest created, are void."

In *Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629 [116 Cal.Rptr. 633, 526 P.2d 1169], the court found enforcement of a due-on-sale clause upon sale of the encumbered property by installment contract constituted an unreasonable restraint against alienation. The court balanced the justification for enforcement of a particular restraint against the quantum of restraint. The burden was placed on the lender to justify the restraint.

Next, in *Wellenkamp, supra*, 21 Cal.3d 943, the court held the *automatic* enforcement by an institutional lender of a due-on-sale clause upon outright sale of the encumbered property was an unreasonable restraint on alienation. At the outset, the court found the due-on-sale clause was indeed a restraint on alienation: "The buyer, faced with the lender's demand for increased interest, may insist that the seller lower the purchase price. The seller would then be forced to choose between lowering the purchase price and absorbing the loss with the resulting reduction in his equity interest, or refusing to go through with the sale at all. In either event, the result in terms of a restraint on alienation is clear." (*Id.*, at pp. 950-951; fns. omitted.) The court then examined whether there was sufficient justification to overcome the quantum of restraint imposed by the due-on-sale clause. A legitimate interest of the lender must be threatened to justify the restraint: "[S]uch interests, which pertain to protection against impairment to the lender's security, included preservation of the security from waste or depreciation and protection against the 'moral risks' of having to resort to the security upon default by an uncreditworthy buyer." (*Id.*, at p. 951.) The court found no such overriding interests but specifically limited its holding to those cases involving institutional lenders. (*Id.*, at p. 952, fn. 9.)

Finally, in *Dawn Investment, supra*, 30 Cal.3d 695, the Supreme Court applied the *Wellenkamp* rule to noninstitutional lenders. No substantial reason had been shown to justify treating private lenders differently than institutional lenders. (*Id.*, at p. 702.) The court rejected the lender's several theories attempting to distinguish private lenders from commercial lenders, including ability to determine whether a sale would endanger security, risk allocation and loss spreading, long or short term financing, and institutional economic projections. The court reiterated and expanded *Wellenkamp's* holding a lender may not enforce a due-on-sale clause upon resale in the absence of a showing of reasonable necessity to protect against impairment of the lender's security or risk to it of default. (*Dawn Investment, supra*, at pp. 700-702.)

■ As directed by *Dawn Investment*, we conclude the private lender is not entitled to an automatic enforcement of a due-on-sale clause; he must justify the restraint by showing impairment of the security.

The trial court made a series of express findings, supported by uncontradicted and substantial evidence, the Callihans did not show any threat to or diminution of their security. In fact, the record shows their interest was more secure after the sale. Thus the Callihans show no basis in law, in equity or in fact to enforce what is on its face an impermissible restraint on alienation. The injunction was proper.

## II

■ The Callihans next assert the trial court erred when it awarded Wilhite $2,623.75 attorney fees pursuant to Civil Code section 1717. The trust deed provides: "... TRUSTOR AGREES:

"(3) ... to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which the Beneficiary or Trustee may appear."

Section 1717 was enacted to establish mutuality of remedy where there is a contractual provision for unilateral recovery of attorney fees. "In any action on a contract, where such contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements ...." (Civ. Code, § 1717.) The Callihans rely upon *Pas v. Hill* (1978) 87 Cal.App.3d 521 [151 Cal.Rptr. 98], for the contention that section 1717 is inapplicable when the prevailing party was not personally liable under the contract by virtue of his status as a nonassuming grantee. *Pas v. Hill* was expressly overruled (by the authoring court) in *Saucedo v. Mercury Sav. & Loan Assn.* (1980) 111 Cal.App. 3d 309 [168 Cal.Rptr. 552]. The *Saucedo* court pointed out that although a nonassuming grantee is under no obligation to pay attorney fees should the foreclosing party prevail, in order to protect his equity, the nonassuming grantee must pay attorney fees "actually incurred not exceeding ... [$50] in case of a deed of trust ... [to] cure the default ...." (Civ. Code, § 2924c, subd. (a).) "This practical liability of the nonassuming grantee is sufficient to call into play the remedial reciprocity established by Civil Code section 1717." (*Id.*, at p. 315.)

In the circumstances of this case, Wilhite was forced to seek an injunction against foreclosure proceedings in order to protect his equity in the property. Had Wilhite lost in that action, his "practical" obligations for attorney fees would not differ from that of *Saucedo* or Wilhite's grantor, the Rogers. Wilhite would have been placed in a position where he would have to proffer attorney fees to forestall foreclosure and protect his security. Any renegotiation of the debt or relief from the due-on-sale clause would most certainly involve payment of attorney fees. Wilhite's "practical liability" under the deed of trust provisions for litigation costs justified the trial court's invocation of section 1717.

Judgment affirmed and cause remanded to the superior court to determine Wilhite's attorney fees for his successful appeal.

Brown (Gerald), P. J., and Wiener, J., concurred.