[No. A029755. First Dist., Div. Three. July 24, 1987.]

JOAN CLAR et al., Plaintiffs and Appellants, v.
THOMAS CACCIOLA et al., Defendants and Appellants

COUNSEL

John L. Hosack, Nancy L. Braun, Craig M. Hughes and Tobin & Tobin for Plaintiffs and Appellants.

Jefferson Frazier, Jean F. Dunkirk, Michael E. Di Geronimo and Miller Starr & Regalia for Defendants and Appellants.

OPINION

**MERRILL, J.**—This action concerns the competing claims to priority of two deeds of trust on a residence. We conclude that the trial court correctly

adjudged that the deed of trust of defendants recorded first was valid, and was a lien prior in time to that of plaintiffs' deed of trust; we therefore affirm.

## I.

The property which is the subject of this lawsuit was owned by Richard and Sharon Larscheid, a married couple. Richard Larscheid (Larscheid) was a real estate salesperson employed by Richard Morrell, a real estate broker, promoter and investor in Contra Costa County. Larscheid's job was to solicit funds from investors. Starting in 1978 or 1979, Larscheid frequently solicited funds from defendant Thomas Cacciola for investment in various real estate ventures. Cacciola, a real estate and insurance broker from Pittsburg, was a longtime friend of both Richard and Sharon Larscheid. Over a period of approximately three years, Richard Larscheid induced Cacciola to invest large sums of money in a number of real estate investments. At the same time, Morrell was soliciting and obtaining funds for investment from defendant Peter Vetrano, a retired restaurant owner and friend of Cacciola. By the end of 1980, Cacciola had given approximately $229,000 to Morrell and Larscheid for investment purposes which was still not repaid, and Vetrano had given about $200,000, also unrepaid. Virtually none of the amounts invested by Cacciola and Vetrano with Morrell and Larscheid was secured. By January 1981, Morrell and Larscheid had ceased making interest payments on the amounts they owed, and some of their previous checks had been returned by the bank on which they were drawn due to insufficient funds.

Larscheid persuaded Cacciola and Vetrano that they could recoup the funds they were owed if they made one more large-scale investment, to complete the construction of two projects Morrell and Larscheid had been unable to finish. Cacciola and Vetrano eventually agreed to furnish $270,000 as part of a "joint venture" with Morrell and Larscheid; in return, Larscheid agreed to use his own personal residence as security for this amount. Larscheid then executed and delivered to Cacciola a promissory note secured by a second deed of trust on his home in Danville, in the principal amount of $364,000. This deed of trust was supposed to be in second position behind a $200,000 first deed of trust held by the Bank of America. Richard Larscheid had signed the promissory note and the deed of trust for both himself and for his wife Sharon, in accordance with his usual practice. Both Richard and Sharon Larscheid testified at trial that Richard habitually signed his wife's name on her behalf on deeds to property, deeds of trust and checks, and that she had never objected to this longstanding practice.

In delivering the note and deed of trust to Cacciola in March 1981, Larscheid persuaded Cacciola to make a "gentleman's agreement" with him that the deed of trust would not be recorded until the date the promissory note became due, August 10, 1981, and would not be recorded at all if the note were paid prior to that time. The purported reason given by Larscheid for this "gentleman's agreement" was that Cacciola and Vetrano would get their money within 90 days anyway, and Larscheid's wife did not want any encumbrance of record placed on their home.

Morrell went bankrupt in April 1981, and work on the project was halted. On August 10, 1981, not having received any payment from Larscheid, Cacciola recorded the deed of trust.

In the interim, the Larscheids had arranged for a loan in the amount of $200,000 from plaintiffs Joan Clar, Dorothy Siner, Aaron Kobel, Sam Rasmussen, Katherine Rasmussen, Vada Morgan and Harriet Morgan. On or about August 19, 1981, the Larscheids entered into a loan agreement with plaintiffs pursuant to which a promissory note for $200,000 was to be secured by a second deed of trust on the same property as that securing the Cacciola/Vetrano deed of trust, namely, the Larscheid's personal residence in Danville. The promissory note and deed of trust on this loan were executed and delivered on August 21, 1981, and recorded on August 28, 1981. Like the Cacciola deed of trust, this trust deed was supposed to be in second position. In this case, Sharon Larscheid did sign the promissory note and deed of trust herself. Because of Cacciola's prior recordation of his deed of trust pursuant to the "gentleman's agreement," however, plaintiffs' deed of trust was actually in third position.

The Larscheids defaulted on all three of the obligations secured by their residence. On November 5, 1981, Cacciola recorded a notice of default and election to sell under his second deed of trust. Thereafter, plaintiffs filed their complaint to avoid the lien of the Cacciola deed of trust. The action was tried to the court, which rendered its memorandum of decision in favor of Cacciola and Vetrano, and entered judgment thereon. This appeal followed.

## II.

Plaintiffs argue that they have standing to challenge the validity of the Cacciola deed of trust. We disagree.

Under Civil Code[1] section 5127, "either spouse has the management and control of the community real property, . . . but both spouses either personally or by duly authorized agent, must join in executing any instrument by which such community real property or any interest therein is . . . sold, conveyed, or encumbered . . . ." Plaintiffs contend that pursuant to this provision, a deed of trust purporting to encumber community property is totally void if not signed or authorized by the wife. They argue that as recipients of a promissory note and deed of trust validly signed by both Richard and Sharon Larscheid and as successors in interest to the Larscheids, they may challenge the validity of the Cacciola deed of trust on the grounds that it was void under section 5127. In support of their position they cite *Wolfe* v. *Lipsy* (1985) 163 Cal.App.3d 633 [209 Cal.Rptr. 801] and *Vaughan* v. *Roberts* (1941) 45 Cal.App.2d 246, 259 [113 P.2d 884].

Plaintiffs' position is unsupported by any case law, including that which they cite. The cases interpreting section 5127 and its statutory predecessors have held that unauthorized gifts, sales or encumbrances of community property are not void, but voidable, and this only at the instance of the other spouse or his or her personal representative. (*Harris* v. *Harris* (1962) 57 Cal.2d 367, 369-370 [19 Cal.Rptr. 793, 369 P.2d 481]; *Head* v. *Crawford* (1984) 156 Cal.App.3d 11, 17-18 [202 Cal.Rptr. 534]; *Andrade Development Co.* v. *Martin* (1982) 138 Cal.App.3d 330, 333-335 and fn. 2 [187 Cal.Rptr. 863]; *Mitchell* v. *American Reserve Ins. Co.* (1980) 110 Cal.App.3d 220, 223 [167 Cal.Rptr. 760]; *Gantner* v. *Johnson* (1969) 274 Cal.App.2d 869, 876-877 [79 Cal.Rptr. 381] ; *Horton* v. *Horton* (1953) 115 Cal.App.2d 360, 364 [252 P.2d 397].)

In *Vaughan* v. *Roberts, supra,* 45 Cal.App.2d 246, cited by plaintiffs, the court stated in a brief discussion, that the note and trust deed on community property were "void" because neither had been signed or authorized by the wife. This statement must be read in the context of that case, in which the husband and wife together brought suit against the holders of the note and deed of trust to cancel the instruments as void. It is readily distinguishable from the instant case, in which the Larscheids have *never* challenged the validity of the Cacciola deed of trust, and the only parties seeking to have it voided are creditors of the original property owners who are the holders of a subsequent note and deed of trust on the same property.

The other case cited by plaintiffs, *Wolfe* v. *Lipsy, supra,* 163 Cal.App.3d 633, is similarly distinguishable. *Wolfe* turned on the impact of a recorded declaration of homestead under former Civil Code section 1242 which provided in pertinent part that the homestead of a married person cannot be

---

[1] All statutory references are to the Civil Code unless otherwise indicated.

conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife. The court held that the trial court did not abuse its discretion in concluding that under this statute an encumbrance of a marital homestead by one spouse only is void and not merely voidable. (*Id.*, at pp. 640-643.) However, the court went on to point out that an encumbrance of community property by one spouse contrary to the provisions of section 5127 is actually valid and binding as to the consenting spouse's one-half interest, and voidable as it relates to the nonconsenting spouse's one-half interest. (*Id.*, at p. 642; see also *Mitchell* v. *American Reserve Ins. Co., supra,* 110 Cal.App.3d at pp. 223-224.)

We conclude that plaintiffs had no standing to challenge the validity of the Cacciola note and deed of trust. Section 5127 was designed to protect a spouse from the unauthorized alienation or encumbering of marital property by the other spouse; it has never been interpreted in such a way as to provide a means whereby a third party creditor of the married couple may challenge and void instruments signed by only one of the spouses. Therefore, there was no error in the trial court's judgment confirming the validity of Cacciola's deed of trust.[2]

### III.

■ Defendants Cacciola and Vetrano filed a cross-appeal contending that the trial court erred in not awarding them attorney fees as the prevailing party. Defendants argue that if plaintiffs had been successful in this lawsuit and then sought to foreclose on their deed of trust, that defendants, in order to prevent foreclosure and protect their equity in the property, would have been required to pay off the secured debt including the attorney fees incurred by plaintiffs in the foreclosure proceeding. Defendants urge that since payment of plaintiffs' attorney fees would have been a condition of redemption, defendants should be awarded their fees under the reciprocity provisions of section 1717.[3] The argument is without merit.

---

[2] We note that even if plaintiffs did have standing as subsequent lienholders to challenge the validity of the Cacciola trust deed, the trial court's decision that Richard Larscheid was authorized to sign the Cacciola note and deed of trust on behalf of his wife was supported by substantial evidence in the record showing that the Larscheids had a longstanding practice between themselves in which Richard Larscheid signed his wife's name to important legal and financial documents, and that she was aware of and accepted the benefits of this practice. In addition, there was substantial evidence in the record to support the conclusions that the note and trust deed appeared regular on their face, that Cacciola had no reason to know that Sharon Larscheid had not actually signed the documents, that the delivery of the disputed note and deed of trust to Cacciola was complete and unconditional, and that the deed of trust was supported by ample consideration.

[3] Civil Code section 1717 provides in pertinent part as follows: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are in-

The key fact in this case is that the attorney fees provisions were contained in two *separate* sets of notes and deeds of trust on the subject property, and that there was a total lack of privity between Cacciola and plaintiffs. Plaintiffs initiated the action on their deed of trust, seeking to have the competing Cacciola trust deed declared invalid. The central issue was the priority of these competing trust deeds. Contrary to defendants' contentions, we can perceive no trend in the law toward permitting parties not in privity to take advantage of the provisions of section 1717 in the factual situation confronting the trial court in the instant case. As stated by section 1021 of the Code of Civil Procedure: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." The attorney fees provisions here were between the Larscheids and plaintiffs on the one hand and between the Larscheids and defendants on the other. The simple fact is that here, there was no agreement between the parties providing for attorney fees; neither was there any privity of relationship between the parties under which a court could imply a reciprocal right to attorney fees.

Defendants cite two cases in which the reciprocal attorney fees allowance of section 1717 was extended to allow parties not in privity to recover their attorney fees despite the lack of a direct contractual relationship. (*Saucedo* v. *Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309 [168 Cal.Rptr. 552]; *Wilhite* v. *Callihan* (1982) 135 Cal.App.3d 295 [185 Cal.Rptr. 215].) Both *Saucedo* and *Wilhite* involved an award of attorney fees to nonassuming grantees of the subject properties who were successful in enjoining trust deed holders from enforcing due-on-sale clauses in promissory notes secured by deeds of trust. Here, unlike the situation in either *Saucedo* or *Wilhite,* plaintiffs and defendants are complete strangers to each other; there are two *separate* notes and deeds of trust to the same property; the central issue is the priority of the two competing deeds of trust; both parties were creditors of the individual property owners giving competing deeds of trust; neither party was purchasing the property; and neither party took their trust deed "subject to" any other deed of trust.

Moreover, the basic premise of defendants' argument is flawed. The decisions in *Saucedo* and *Wilhite* were based on the fact that if the nonassuming

---

curred to enforce the provisions of that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the prevailing party, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements. [¶] Where a contract provides for attorney's fees, as set forth above, such provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract. [¶] Reasonable attorney's fees shall be fixed by the court, upon notice and motion by a party, and shall be an element of the costs of suit."

grantees were unsuccessful in procuring an injunction, then in order to forestall foreclosure it would be necessary for them as a condition of redemption to pay off the secured debt including attorney fees incurred by the lenders. This "practical liability" of the nonassuming grantees for attorney fees provides justification for the trial court to invoke the remedial reciprocity established by section 1717. By contrast, in the case at bench, had plaintiffs been successful in their suit, defendants' deed of trust on the subject property would have been in third position, behind two deeds of trust securing large loans. There is nothing in the record to indicate that defendants would have paid off these loans in order to redeem the property. It is complete speculation to suggest that defendants would have ever been in the position of having to pay plaintiffs' attorney fees even if plaintiffs had prevailed in this action.

In conclusion, we decline defendants' invitation to extend the reciprocal attorney fees provisions of section 1717 to situations such as the present case, in which competing lienholders with entirely separate deeds of trust are litigating their respective priorities with respect to a single piece of property, and no relationship of privity or principles of equity would render inapplicable the well established rule which precludes an award of attorney fees to prevailing parties unless provided for by agreement or statute.

The judgment is affirmed.

Scott, Acting P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied August 24, 1987, and the petition of plaintiffs and appellants for review by the Supreme Court was denied October 14, 1987.