[No. A126145. First Dist., Div. Four. June 7, 2011.]

DIAMOND HEIGHTS VILLAGE ASSOCIATION, INC., Plaintiff and Appellant, v.
FINANCIAL FREEDOM SENIOR FUNDING CORP., Defendant and Respondent.

[Nos. A126682, A127787. First Dist., Div. Four. June 7, 2011.]

DIAMOND HEIGHTS VILLAGE ASSOCIATION, INC., Plaintiff and Respondent, v.
FINANCIAL FREEDOM SENIOR FUNDING CORP., Defendant and Appellant.

292

COUNSEL

Ragghianti Freitas, David F. Feingold and Rodrigo D. Dias for Plaintiff and Appellant and for Plaintiff and Respondent.

Steyer Lowenthal Boodrookas Alvarez & Smith, Jeffrey H. Lowenthal, Carlos A. Alvarez and Benjamin R. Ehrhart for Defendant and Appellant and for Defendant and Respondent.

OPINION

SEPULVEDA, J.—Plaintiff Diamond Heights Village Association, Inc. (Association), sued the owners of a condominium unit for failing to pay assessments levied for maintenance of common areas. The Association also sued Financial Freedom Senior Funding Corporation (Financial Freedom), which holds a deed of trust on the unit securing a reverse mortgage loan. In its single cause of action against Financial Freedom, the Association sought foreclosure of assessment liens and priority over the deed of trust. Financial Freedom obtained a summary judgment in its favor. A bench trial against the unit owners on other causes of action was held, at which the court partially voided Financial Freedom's deed of trust.

The Association appeals the summary judgment for Financial Freedom, and Financial Freedom appeals the judgment on the remaining claims voiding its property interest. Financial Freedom also appeals the court's attorney fee orders.

We affirm summary judgment for Financial Freedom on the lien foreclosure cause of action and reverse the judgment on the remaining claims to the extent it voids Financial Freedom's deed of trust. The trial court erred in voiding Financial Freedom's security interest in the property when Financial Freedom had not been joined as a party on the claims being tried, and final judgment had already been entered in its favor. We affirm the court's attorney fee orders.

I. FACTS

The Association maintains a 396-unit residential condominium complex in San Francisco known as Diamond Heights Village. Diamond Heights Village is governed by a first restated declaration of covenants, conditions, and restrictions (CC&R's) recorded in 1990. Under the CC&R's, homeowners agree to pay assessments levied by the Association for maintenance of Diamond Heights Village. (See Civ. Code, § 1366 [authorizing assessments].)

A. *Assessment liens*

Mark Williams owned a unit in Diamond Heights Village and failed to pay the assessments. The Association recorded notices of delinquent assessment in 1994 and 1995. To avoid collection efforts by the Association and other creditors, Williams filed five separate bankruptcy petitions from 1995 to 1999, each of which was dismissed. Several days after the fifth bankruptcy petition was dismissed, Williams conveyed the Diamond Heights Village condominium unit to himself and his mother, Lois Crosby, as joint tenants. In 2000 and 2001, the Association recorded assessment liens against the condominium unit. (Civ. Code, § 1367.)

B. *Judgment on assessment liens*

In 2002, the Association obtained a default judgment against Williams for foreclosure of the assessment liens. The total amount of the judgment, including attorney fees and costs, was $39,199.[1] The Association did not record an abstract of judgment. The court issued a writ of execution for the sale of the unit to satisfy the judgment. Crosby, now a joint tenant of the unit, filed a petition for bankruptcy to evade the Association's collection efforts. A second writ of execution was issued and a foreclosure sale was set for 2004, after Crosby's bankruptcy petition was dismissed, but Williams filed a sixth bankruptcy petition on the day set for the sale. That bankruptcy petition, like all the others, was dismissed. Several months later, Williams and Crosby embarked on another transaction affecting the condominium unit before a foreclosure sale was conducted.

C. *New first deed of trust*

In October 2004, Crosby applied for a reverse mortgage with defendant Financial Freedom, a subsidiary of IndyMac Bank. A homeowner must be 62 years of age or older to qualify for a reverse mortgage with Financial Freedom. Crosby, born in 1920, qualified. Crosby's application stated that there was an outstanding judgment against her and listed the Association among those holding a lien on the property.

Financial Freedom ordered a preliminary title report that noted title ownership by Crosby and her son, Williams, as joint tenants. The preliminary title report did not list the Association's assessment liens despite their

---

[1] Monetary amounts are rounded to the nearest dollar in this opinion.

recordation with the county recorder's office. The Association's judgment had not been recorded and was not listed in the title report.[2]

In November 2004, Financial Freedom obtained certification from the Association concerning certain features of Diamond Heights Village, such as unit ownership in fee simple and the provision of property and liability insurance. The Association also certified that there was nothing in the CC&R's "that would prevent the placing of a first mortgage lien on an individual unit or would jeopardize the first lien status of such a mortgage due to *future* association assessments." (Italics added.) Financial Freedom's certification form did not ask if there were unpaid past assessments.

Financial Freedom completed the transaction in December 2004, creating a new first mortgage. Williams transferred his one-half interest in the unit to his mother, Crosby, giving her full title to the unit. Crosby then executed a deed of trust in favor of Financial Freedom to secure a reverse mortgage loan. The two documents—Williams's grant deed and Crosby's deed of trust—were notarized by the same person on the same date, and recorded within seconds of each other. Williams did not receive any consideration from his mother for the transfer of his ownership interest in the unit. In funding the loan, Financial Freedom paid off first and second deeds of trust totaling $219,935. Financial Freedom also paid $48,948 in cash to Crosby. Financial Freedom funded the loan in an amount no less than $278,505.

D. *Amended judgment on assessment liens*

An amended judgment against Williams and Crosby for foreclosure of the Association's assessment liens was entered in 2005. The amended judgment included interest and costs incurred from the time of the original 2002 judgment and totaled $51,184. The Association did not record an abstract of judgment for the amended judgment. The Association obtained a writ of execution for the sale of the unit, but Crosby filed another petition for bankruptcy. The petition was later dismissed. The judgment was last renewed in January 2008 for an updated amount of $64,854.

E. *Complaint to set aside fraudulent transfer and to foreclose lien*

The Association learned of Financial Freedom's first deed of trust at some point and, in an effort to establish priority for its assessments over Financial Freedom's deed of trust, filed the present action in December 2007. The

---

[2] The title report did list an abstract of judgment in favor of Hassen & Associates in the amount of $6,438 that was recorded in 1996. On appeal, it is undisputed that Hassen & Associates has a judgment lien superior to the secured interest of the Association and Financial Freedom.

Association stated six causes of action: setting aside fraudulent transfer; conspiracy; breach of contract (CC&R's); foreclosure of a lien; open book account; and injunctive relief. All of the causes of action were stated against Williams and Crosby but only the fourth cause of action for foreclosure of a lien was stated against Financial Freedom. The fourth cause of action also named judgment creditor Hassen & Associates as a defendant. In that cause of action, the Association alleged that homeowners Williams and Crosby owed assessments amounting to $67,149 as of December 2007 (plus assessments accruing after filing of the complaint). It was further alleged that the homeowners had not satisfied the 2000 and 2001 assessment liens, nor the 2002 judgment and that those liens and judgment "remain valid and encumber the property." The Association alleged that Financial Freedom's 2004 deed of trust is subordinate to the liens and judgment held by the Association. While seeking judicial foreclosure of the assessment liens, the Association also stated its intention to reserve its right to enforce the existing judgment foreclosing the same liens.

F. *Answers and cross-complaint*

Financial Freedom answered the complaint raising several affirmative defenses, including the statute of limitations. It also filed a cross-complaint for declaratory relief and other claims. Financial Freedom asserted that it has a valid first lien against the Diamond Heights Village condominium unit and that it is "a bona fide encumbrancer with respect to said lien." It sought a judicial determination of its rights and interests and those of the Association in the property. Judgment creditor Hassen & Associates also answered the complaint. Homeowners Williams and Crosby never answered the complaint and their default was entered in March 2008.

G. *Summary judgment motion*

In February 2009, Financial Freedom moved for summary judgment on the Association's complaint, which stated a single cause of action against Financial Freedom for foreclosure of liens. Financial Freedom noted that the Association did not have a judgment lien and was basing its priority claim upon the assessment liens. Financial Freedom argued that the Association's action for foreclosure of the assessment liens, and the claimed priority under them, failed because (1) foreclosure of the assessment liens had already been litigated, reduced to judgment, and merged into that judgment; (2) foreclosure of the assessment liens was time-barred; and (3) the CC&R's expressly subordinated assessment liens to first mortgage holders like Financial Freedom.

Judge Charlotte Woolard ruled on the motion on May 6, 2009, and granted summary judgment on the first ground. The court ruled that the Association's assessment liens merged into the judgment in the earlier foreclosure action against the homeowners, that the judgment was unrecorded, and that Financial Freedom's recorded deed of trust thus had priority.

## H. *Judgment for Financial Freedom*

Financial Freedom requested dismissal of its cross-complaint and sought entry of judgment in its favor. In June 2009, Judge Woolard entered a judgment in favor of Financial Freedom and against the Association decreeing that the Association "shall recover nothing, and shall obtain no relief, as against defendant Financial Freedom, in this action." The court denied Financial Freedom's motion for contractual attorney fees under the CC&R's because there was "no privity" between Financial Freedom and the Association. (Civ. Code, § 1717.)

## I. *Trial of remaining claims*

The Association's remaining claims against homeowners Williams and Crosby and judgment creditor Hassen & Associates were tried before Judge Nancy Davis on May 26, 2009, a few weeks after Judge Woolard had granted summary judgment to Financial Freedom. The Association contended that Judge Woolard's summary judgment ruling in Financial Freedom's favor did not preclude Judge Davis from setting aside the alleged fraudulent conveyance *and* determining Financial Freedom's security interest as a result of setting aside that conveyance. The court agreed and proceeded to resolve issues affecting Financial Freedom despite a dispositive ruling in Financial Freedom's favor on the only cause of action against it and its absence from trial on the remaining claims. The only defendant appearing at trial was judgment creditor Hassen & Associates.

The court issued a statement of decision in August 2009. The court found that "the transfer from Williams to Crosby was fraudulent and must be set aside to the extent necessary to satisfy the Association's claim" for assessments. The court noted that, "[a]t the time of the transfer, Williams and Crosby owned the Unit as Joint tenants, each owning an undivided one-half interest. As the transfer is set aside, the result is that Williams and Crosby remain joint tenants and were joint tenants at the time the deed of trust was granted to Financial Freedom by Crosby." Crosby "could encumber her own one half interest, but could not encumber the one half interest in the Unit owned by Williams who, at the time, was a judgment debtor of the Association." The court ruled that the deed of trust "conveyed by Crosby to Financial

Freedom is void to the extent [the deed] purported to encumber Williams's one half interest" in the condominium unit.

The court's statement of decision acknowledges that a fraudulent transfer is not voidable against "a person who took in good faith and for a reasonably equivalent value." (Civ. Code, § 3439.08, subd. (a).) The court ruled that Financial Freedom was not a bona fide encumbrancer entitled to the protection of this statute because Financial Freedom "actively participated in the transfer from Williams to Crosby" and performed an inadequate title review that failed to discover the recorded assessment liens. The court also suggested that Financial Freedom forfeited any claim to bona fide encumbrancer status by dismissing its cross-complaint for declaratory relief and choosing not to appear at trial.

## J. *Judgment for the Association*

The court entered a judgment in August 2009 ordering the Diamond Heights Village condominium unit sold and declaring the rights of the Association, homeowners, Financial Freedom, and judgment creditor Hassen & Associates to the proceeds of the sale. The court declared Hassen & Associates to have senior position, with right of first payment. The court ordered the remaining funds held until any appeal was resolved and, thereafter, "divided between the Association and Financial Freedom in accordance with their one-half secured interest" in the unit. The court awarded the Association $89,562 for assessments through May 2009, payable from Williams's one-half interest in the property. The court also awarded the Association attorney fees against the homeowners under the CC&R's, later assessed at $82,086, to be paid from Williams's property interest. Financial Freedom was left with just Crosby's original one-half interest in the property to secure its mortgage loan and payments of at least $278,505. Sale proceeds from that one-half interest may be insufficient to pay the full amount owed to Financial Freedom.

In September 2009, Financial Freedom filed a motion to vacate the judgment. Financial Freedom argued that the court had no jurisdiction to enter a judgment affecting Financial Freedom's deed of trust because (1) the prior summary judgment fully adjudicated the Association's single cause of action against Financial Freedom, (2) the Association's appeal of the summary judgment divested the court of jurisdiction before the court ruled on the remaining claims affecting Financial Freedom's interest, and (3) Financial

Freedom was not a defendant on the Association's remaining claims and not a party to the trial. The court denied the motion in February 2010.

### K. *The appeals*

We are presented with three related appeals, which we have consolidated for purposes of briefing, argument, and decision. On the summary judgment in Financial Freedom's favor on the foreclosure cause of action: the Association appeals the judgment and Financial Freedom separately appeals the postjudgment order denying it attorney fees. On the judgment following trial in the Association's favor on the cause of action for fraudulent conveyance and all other remaining claims: Financial Freedom appeals both the judgment (and order denying its motion to vacate the judgment) and the postjudgment order awarding the Association attorney fees.

## II. DISCUSSION

### A. *Summary judgment was properly granted to Financial Freedom*

As noted above, the Association recorded assessment liens against the Diamond Heights Village condominium unit in 2000 and 2001. (Civ. Code, § 1367.) In 2002, the Association obtained a default judgment against homeowner Williams for foreclosure of the assessment liens. The Association did not record an abstract of judgment. The court issued writs of execution for the sale of the unit to satisfy the judgment but the homeowners' petitions for bankruptcy stayed proceedings and prevented levy. It was at this juncture that Williams conveyed his one-half interest in the property to his joint tenant and mother, Crosby, and she then mortgaged the entire property to Financial Freedom.

The Association then filed a new complaint in which it asserted a single cause of action against Financial Freedom for foreclosure of the Association's assessment liens and sought priority over Financial Freedom's deed of trust. Financial Freedom moved for summary judgment arguing, among other things, that the Association's action for foreclosure of the assessment liens, and claimed priority under them, failed because foreclosure of the assessment liens had already been litigated, reduced to judgment, and merged into that judgment. Judge Woolard granted the motion. The court ruled that the Association's assessment liens merged into the judgment from the earlier foreclosure action against the homeowners, the judgment was unrecorded, and Financial Freedom's recorded deed of trust thus had priority.

■ The court was correct. A condominium assessment becomes a debt of the owner when the assessment is levied by the condominium association.

(Civ. Code, § 1367.1, subd. (a).) "The debt is only a personal obligation of the owner, however, until the community association records a 'notice of delinquent assessment' against the owner's interest in the development. Recording this notice creates a lien and gives the association a security interest in the lot or unit against which the assessment was imposed." (Sproul & Rosenberry, Advising Cal. Common Interest Communities (Cont.Ed.Bar 2003) § 5.36, p. 328 [hereafter, Common Interest Communities]; see Civ. Code, § 1367, subd. (d).) The lien dates from the time the lien is properly recorded. (*Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1100–1102 [95 Cal.Rptr.2d 779].) "California follows the 'first in time, first in right' system of lien priorities." (*Id.* at p. 1099.) Condominium assessment liens follow this same system. An assessment lien is "prior to all other liens recorded subsequent to the notice of assessment, except that the [CC&R's] may provide for the subordination thereof to any other liens and encumbrances."[3] (Civ. Code, § 1367, subd. (d).)

■ It is generally understood that a lien is not a debt but acts as "security for payment of a debt or other obligation." (4 Cal. Real Estate (3d ed. 2003) § 10:128, p. 395 (rel. 11/2003); see Civ. Code, § 2872.) The debt is the assessment, which is secured by the assessment lien. An assessment lien may be enforced "in any manner permitted by law," including judicial foreclosure. (Civ. Code, § 1367, subd. (e).) When an assessment lien is enforced through judicial action, the debt secured by the lien is merged into the judgment. The doctrine of merger is an aspect of res judicata. (*Passanisi v. Merit-McBride Realtors, Inc.* (1987) 190 Cal.App.3d 1496, 1510 [236 Cal.Rptr. 59].) "Under that aspect a claim presented and reduced to judgment merges with the judgment and is thereby superseded. [Citation.] The claimant's remedy thereafter is to enforce the judgment; he may not reassert the claim." (*Ibid.*)

"[W]hen a final judgment is entered, all causes of action arising from the same obligation are merged into the judgment and all alternative remedies to enforce that obligation extinguished by the judgment granting one of those remedies. [Citation.] The creditor cannot thereafter enforce the original obligation, because the judgment ' ". . . creates a new debt or liability, distinct from the original claim or demand, and this new liability is not merely *evidence* of the creditor's claim, but is thereafter the *substance* of the claim itself." ' ([Citation,] italics in original.) In other words, the . . . judgment extinguishes the contractual rights and remedies previously extant,

---

[3] To ensure financeability of condominiums, most CC&R's "provide that the association's lien is subordinate to the lien of *any* first deed of trust" regardless of when recorded, and Financial Freedom argued as an alternative basis for summary judgment that the CC&R's here are no exception. (Common Interest Communities, *supra*, § 5.46 p. 339, italics added; see generally 9 Miller & Starr, Cal. Real Estate (3d ed. 2001) §§ 25B:92, 25C:57, pp. 25B-181 to 25B-185, 25C-182 to 25C-183 (rel. 10/2007) [hereafter, Cal. Real Estate].) We resolve the summary judgment on the ground adopted by the trial court and thus do not reach that issue.

substituting in their place *only such rights as attach to a judgment.*" (*O'Neil v. General Security Corp.* (1992) 4 Cal.App.4th 587, 602 [5 Cal.Rptr.2d 712].)

 Once a judgment is obtained, the judgment creditor may create a judgment lien by recording an abstract of judgment or may choose to levy execution, thereby creating an execution lien. (Code Civ. Proc., §§ 674, 697.710; *Kahn v. Berman* (1988) 198 Cal.App.3d 1499, 1507, fn. 7 [244 Cal.Rptr. 575].) An execution lien does not arise when a writ of execution is issued by the court, but rather when the levying officer levies the property (constructively seizes it) by recording a copy of the writ of execution and notice of levy. (Code Civ. Proc., §§ 697.710, 700.010, 700.015, subd. (a); *Kahn, supra*, at p. 1508; see generally 8 Witkin, Cal. Procedure (5th ed. 2008) Enforcement of Judgment, § 99, p. 143.) The record here does not show that a levy ever occurred to create an execution lien, and the Association makes no claim to having an execution lien. The Association relies exclusively upon its assessment liens, despite having already foreclosed those liens in a 2002 judgment. The claim is unavailing. Those liens were foreclosed and the debts they secured were merged into the judgment. The Association's remedy was to record the judgment, in which case the judgment lien would have given the Association priority over Financial Freedom. (Code Civ. Proc., § 697.310 et seq.)

 The Association seems to argue that an assessment lien lasts forever, even if foreclosed in a prior proceeding. This is incorrect. A lien is not a debt but acts as "security for payment of a debt or other obligation." (4 Cal. Real Estate, *supra*, § 10:128, p. 395 (rel. 11/2003).) All liens are "extinguished by the lapse of time" if an enforcement action is not timely pursued on the principal obligation.[4] (Civ. Code, § 2911, subd. 1.) Where an action is timely pursued, the debt secured by the lien merges into the judgment. The judgment then becomes the debt. The judgment is enforceable for a period of 10 years, and longer if renewed. (Code Civ. Proc., §§ 683.020, 683.120, subd. (b).) The Association has an enforceable judgment. It does not, however, have a lien on the property because the assessment liens and underlying debts merged into the judgment and the judgment was not recorded.

The Association argues that application of the merger doctrine under these circumstances creates the anomalous situation of a condominium association losing priority the moment a judgment is entered on an assessment. The Association argues that assessment liens should work like real estate attachment liens imposed during litigation. Where an attachment lien is in effect, a

---

[4] As yet another alternative basis for summary judgment, Financial Freedom argued that the Association's 2007 action to foreclose on the 2000 and 2001 liens was time-barred. (See Cause of Action to Enforce Condominium Assessment (1989) 20 Causes of Action 827, § 9, accessible on Westlaw, database updated Sept. 2010 [assessment liens subject to statute of limitations].) We need not reach that issue.

judgment lien created on the same property relates back to the date the attachment lien was created and preserves the judgment creditor's original priority. (Code Civ. Proc., § 697.020, subd. (b).) But a judgment itself does not relate back to the date of the attachment liens—it is the judgment lien that does so. Here, there is no judgment lien. The Association, therefore, has an unsecured judgment and may pursue enforcement against the homeowners. The Association may not, however, relitigate foreclosure of its assessment liens in an effort to achieve priority over Financial Freedom's deed of trust.

The Association maintains that it is not really relitigating the assessments but, instead, the fraudulent conveyance that gave Financial Freedom a deed of trust. But Financial Freedom was not named as a defendant in the fraudulent conveyance cause of action. Financial Freedom was named as a defendant in a single cause of action for judicial foreclosure of the assessment liens. In that cause of action, the Association sought recovery against the homeowners for past assessments and alleged that the 2000 and 2001 liens encumber the property to secure the assessments. Those allegations were asserted, and adjudicated, in prior litigation. They may not be relitigated now. The trial court properly granted summary judgment to Financial Freedom on the Association's cause of action to foreclose the previously litigated assessments liens.

B. *The trial court erred in rendering a judgment on remaining claims that impaired Financial Freedom's interests*

The trial court granted defendant Financial Freedom summary judgment on the only cause of action stated against it. The order was filed on May 6, 2009. Financial Freedom then dismissed its cross-complaint, and Judge Woolard entered judgment for Financial Freedom on June 3, 2009. The judgment decreed that the Association "shall recover nothing, and shall obtain no relief, as against defendant Financial Freedom, in this action."

Trial of the Association's remaining claims against other defendants commenced before Judge Davis on May 26, 2009, and judgment was entered on August 17, 2009. Trial of those remaining claims was proper, including trial of the Association's cause of action against the homeowners for fraudulent conveyance of their condominium unit. It was not proper, however, to void Financial Freedom's security interest in the property (in whole or part) when Financial Freedom had not been joined as a party to the fraudulent conveyance cause of action, and final judgment had already been entered in its favor.

The Association brought its first cause of action to set aside a fraudulent transfer of real property against homeowners Williams and Crosby. A transfer is fraudulent if the debtor made the transfer "[w]ith actual intent to hinder,

delay, or defraud any creditor of the debtor," "[w]ithout receiving a reasonably equivalent value in exchange for the transfer," and with the intent to incur debts beyond the debtor's ability to pay. (Civ. Code, § 3439.04, subd. (a)(1), (2).) Here, the Association alleged that Williams fraudulently conveyed his one-half interest to Crosby for no consideration in order to evade his debt to the Association, and that the transfer left Williams insolvent. The Association further alleged that Crosby was complicit in the fraudulent scheme. Crosby, once she obtained full ownership of the property, took out a reverse mortgage loan and made Financial Freedom the beneficiary of a deed of trust securing the loan. The Association did not allege that Financial Freedom participated in the homeowners' fraudulent scheme. In fact, the Association did not name Financial Freedom as a defendant in its action to set aside the alleged fraudulent conveyance. Nor did the · Association name the trustee of the deed of trust, Alliance Title Company. The Association's position, adopted by Judge Davis, was that the court could void Financial Freedom's security interest in the conveyed property despite Financial Freedom's nonjoinder. This was error.

█ The Association was free to exclude Financial Freedom from the fraudulent conveyance cause of action if it sought only a personal judgment against Williams and Crosby. But if the Association wanted to void Financial Freedom's interest in the property, it should have joined the deed beneficiary as a party. (Code Civ. Proc., § 379.) Transferees are necessary parties "in an action to declare a transfer void as fraudulent." (*Heffernan v. Bennett & Armour* (1952) 110 Cal.App.2d 564, 586–587 [243 P.2d 846].) Williams transferred his one-half interest to Crosby, making her the principal transferee, but the transaction also included Crosby's execution of a deed of trust benefitting Financial Freedom. The Association may not void the deed of trust without joining Financial Freedom as a party and giving it an opportunity to defend the transfer. Trust beneficiaries, like Financial Freedom, "are necessary parties to an action affecting the security of a deed of trust." (*Monterey S.P. Partnership v. W. L. Bangham, Inc.* (1989) 49 Cal.3d 454, 461 [261 Cal.Rptr. 587, 777 P.2d 623]; accord, *Sylvester v. Sylvester* (Alaska 1986) 723 P.2d 1253, 1259–1260 [mortgagee a necessary party in fraudulent conveyance action to set aside mortgage].) A deed of trust is, in practical effect, a mortgage with a power of sale. (*Monterey S.P. Partnership, supra,* at p. 460.) A respected commentator on the law has noted that a mortgagee is not indispensable to a fraudulent conveyance action "if the conveyance is to be set aside subject to the mortgage, . . . [b]ut where the suit is to set aside a previously given mortgage as fraudulent, then the mortgagee is a proper party defendant." (3A Moore, Moore's Federal Practice (2d ed. 1996) ¶ 19.09[6], p. 19-191.) The Association argues that Financial Freedom's absence from the trial is the fault of Financial Freedom itself because it dismissed its cross-complaint seeking a declaration of its interests. This is incorrect.

Financial Freedom was entitled to abandon its cross-complaint after obtaining summary judgment in its favor on the only cause of action stated against it in the complaint. It was the Association's obligation, as plaintiff in the fraudulent conveyance cause of action, to name parties necessary to obtaining the relief it sought.

The judgment voiding Financial Freedom's interest in the property is also defective in another respect. Judge Woolard granted Financial Freedom's summary judgment motion on May 6, 2009, and entered judgment on June 3, 2009. Judge Davis did not enter judgment on the remaining claims until August 17, 2009, over two months after Financial Freedom obtained a judgment decreeing that the Association "shall recover nothing, and shall obtain no relief, as against defendant Financial Freedom, in this action." Judge Davis's judgment also came after the Association appealed Judge Woolard's judgment in Financial Freedom's favor. Despite that final decree, and its appeal, Judge Davis issued a judgment granting the Association relief against Financial Freedom. Judge Davis voided Financial Freedom's deed of trust as to one-half of the property and gave the Association priority over Financial Freedom on that half. This, too, was error.

■ Judge Woolard properly entered judgment for Financial Freedom in this multiple defendant action after adjudicating the single cause of action stated against it. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 437 [129 Cal.Rptr.2d 436].) "A judgment is the *final* determination of the rights of the parties in an action or proceeding." (Code Civ. Proc., § 577, italics added.) "It is elementary that where a tribunal has jurisdiction over the parties and the subject matter, the jurisdiction continues *until a final judgment is entered* . . . ." (*Riley v. Superior Court* (1957) 49 Cal.2d 305, 309 [316 P.2d 956], italics added.) The court lost jurisdiction over Financial Freedom once judgment was entered in its favor, and thus had no power to void its property interest in the condominium unit.

Therefore, we must reverse the judgment entered by Judge Davis and remand the case with directions to enter a judgment affecting the rights only of those defendants properly before it: homeowners Williams and Crosby and judgment creditor Hassen & Associates. The judgment shall not invalidate any part of Financial Freedom's deed of trust or otherwise impair its interests in the property.

C. *The trial court was correct in ruling that Financial Freedom is not entitled to attorney fees*

■ Attorney fees incurred to enforce a contract are recoverable by the party prevailing on the contract if the contract specifically provides for such

recovery. (Civ. Code, § 1717.) The Diamond Heights Village CC&R's contain several attorney fee provisions. The CC&R's state that the Association may maintain a lawsuit against a unit owner for delinquent assessments, and that any judgment against the owner shall include an award of reasonable attorney fees. The Association is also entitled to attorney fees, according to the CC&R's, in a court action to foreclose assessment liens. The CC&R's also contain a general attorney fee provision, which states that the Association, or any owner, has the right to enforce the CC&R's and is entitled to recover attorney fees in such an action.

The Association, in its foreclosure cause of action against the homeowners, Financial Freedom, and judgment creditor Hassen & Associates, included in its complaint a plea for an award of contractual attorney fees *against the homeowners.* The Association did not request attorney fees against Financial Freedom. Nevertheless, Financial Freedom filed a motion for contractual attorney fees after obtaining summary judgment in its favor. The court denied the motion, and Financial Freedom challenges that denial on appeal. The trial court was correct.

Civil Code section 1717, subdivision (a) provides in pertinent part that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

Civil Code "[s]ection 1717 was enacted to establish mutuality of remedy where [a] contractual provision makes recovery of attorney's fees available for only one party [citations], and to prevent oppressive use of one-sided attorney's fees provisions." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128 [158 Cal.Rptr. 1, 599 P.2d 83].) In this case, for example, the attorney fee provision in the CC&R's entitling the Association to attorney fees if it prevailed in an action against a condominium unit owner would reciprocally entitle the owner to fees should he or she prevail.

Civil Code section 1717 is also interpreted "to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." (*Reynolds Metals Co. v. Alperson, supra,* 25 Cal.3d at p. 128.) Thus, a

defendant who did not sign the contract.containing the fee provision was held to be entitled to attorney fees where the defendant was unsuccessfully sued as an alleged coventurer bound by the contract. (*Ibid.*) Had the plaintiff in that case prevailed on its claim, the defendant would have had to pay the plaintiff's attorney fees. (*Ibid.*) The court reasoned that the defendant therefore had a reciprocal right to fees when she prevailed. (*Id.* at p. 129.)

These principles do not aid Financial Freedom because the Association did not sue Financial Freedom under the CC&R's, never sought fees against Financial Freedom under the CC&R's, and was not entitled to fees against Financial Freedom had the Association prevailed. Civil Code section 1717 covers signatories to a contract containing a fee provision and those who are sued as alleged parties to the contract or otherwise alleged to be bound by its terms. The Association never alleged that Financial Freedom was bound by the CC&R's. The Association included Financial Freedom in the cause of action for judicial foreclosure of liens because Financial Freedom claimed a senior lien that the Association disputed. The action between the Association and Financial Freedom rested upon a legal question as to lien priority, not contractual enforcement of the CC&R's.

Financial Freedom argues that it is nevertheless entitled to fees because "as a practical matter" Financial Freedom, and not the legally liable homeowners, would have had to bear the cost of the fees if the Association prevailed against the owners. Financial Freedom reasons as follows: if the Association prevailed on its judicial foreclosure claim and assertion of lien priority, the Association would have been entitled to fees against the homeowners under the CC&R's. Those fees, as a debt of the homeowners, would have been paid to the Association from the sale proceeds before Financial Freedom, as a junior lienholder on half the property, received any proceeds (or Financial Freedom would have to pay the Association's secured debt and fees to protect Financial Freedom's property interest and avoid foreclosure of the property). Financial Freedom argues that this collateral economic consequence of a foreclosure action entitles it to fees.

Financial Freedom's argument relies upon *Saucedo v. Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309 [168 Cal.Rptr. 552] (*Saucedo*). In *Saucedo*, home buyers took the property subject to an existing loan secured by a deed of trust. (*Id.* at p. 311.) The deed holder refused to allow the purchasers to assume the loan without paying a transfer fee and increased interest, and threatened to enforce a due-on-sale clause requiring full payment of the loan. (*Ibid.*) The purchasers filed a successful suit to enjoin the deed holder from

enforcing the due-on-sale clause, and the court held that they were entitled to attorney fees. (*Id.* at pp. 312, 315.) The court found that the purchasers would not have been liable for fees had the deed holder prevailed because the loan note was between the deed holder and prior owner but also found that "as a . . . practical matter" the purchasers would have to pay off the secured debt, including attorney fees, if they wanted to prevent foreclosure and retain their home. (*Id.* at p. 315.) The court concluded that "[t]his practical 'liability' of the nonassuming grantee [purchaser] is sufficient to call into play the remedial reciprocity established by Civil Code section 1717." (*Ibid.*) Since the purchasers would, "as a real and practical matter" be required to pay attorney fees incurred by the deed holder to prevent foreclosure, the purchasers were entitled to recover attorney fees when they prevailed in a declaratory relief action that forestalled foreclosure. (*Ibid.*)

There are distinguishing points between *Saucedo* and this case. A central point of distinction is that the purchasers who recovered fees in *Saucedo* were the successors in interest to the property subject to the promissory note containing the disputed due-on-sale clause and fee provision. (See *Leach v. Home Savings & Loan Assn.* (1986) 185 Cal.App.3d 1295, 1304–1306 [230 Cal.Rptr. 553] [distinguishing and limiting *Saucedo*].) Here, the Association and Financial Freedom are complete strangers to each other, and the dispute rests upon the priority of competing security interests established by separate documents (an assessment lien and a deed of trust). The case resembles *Clar v. Cacciola* (1987) 193 Cal.App.3d 1032, 1037–1039 [238 Cal.Rptr. 726] more than it resembles *Saucedo, supra*, 111 Cal.App.3d at page 315. In *Clar*, this District Court of Appeal refused to extend the reciprocal attorney fee provision of Civil Code section 1717 where the parties advanced competing claims on the priority of two deeds of trust. (*Clar, supra*, at pp. 1038–1039.) The prevailing defendants in *Clar* claimed a right to recover attorney fees because, had they lost, the plaintiffs' attorney fees would have been added to the secured debt under the terms of the deed of trust, which the defendants would have had to pay "to prevent foreclosure and protect their equity in the property." (*Id.* at p. 1037.) The court held that the defendants' potential obligation to pay fees was too speculative. (*Id.* at pp. 1037–1038.)

██ Likewise, Financial Freedom's claim for attorney fees stretches Civil Code section 1717 too far. The statute is meant to prevent "oppressive use of one-sided attorney's fees provisions" (*Reynolds Metals Co. v. Alperson, supra*, 25 Cal.3d at p. 128), not to abolish the general rule that each party pay its own attorney fees. It is one thing to grant nonsignatories the right to attorney fees where they are sued as if they were contracting parties liable for fees or otherwise held to the terms of the contract, and quite another to grant nonsignatories the right to attorney fees where no legal liability for fees was ever asserted and only an attenuated economic impact is threatened. The "practical liability" approach advocated by Financial Freedom is fraught with

peril. As one commentator has noted, "[i]n practical liability . . . cases, courts must make very fact specific analyses about the prevailing party's potential liability had [he or] she lost. Nearly identical factual circumstances could yield entirely different results. The danger with analyzing the prevailing party's practical liability is subjectivity and lack of guidelines for the courts to follow." (Miller, *Attorneys' Fees for Contractual Non-Signatories Under California Civil Code Section 1717: A Remedy in Search of a Rationale* (1995) 32 San Diego L.Rev. 535, 578–579, fn. omitted.) We decline Financial Freedom's invitation to embark on this course.

D. *The Association was entitled to attorney fees against the homeowners*

As noted earlier, claims against the remaining defendants were tried after defendant Financial Freedom obtained summary judgment. Following that trial, the court awarded the Association, as the prevailing party, attorney fees against defendant homeowners Williams and Crosby under the CC&R's and a statute authorizing fee recovery in a condominium association's action to collect delinquent assessments. (Civ. Code, §§ 1717, 1366, subd. (e)(1).) Financial Freedom does not deny the validity of these fee provisions but argues that fees should have been denied in this instance because "as a practical matter" Financial Freedom as a junior lienor on one-half of the foreclosed property, not the homeowners, will bear the economic impact of the fee award. We again note our reluctance to embrace the practical liability approach to Civil Code section 1717 but have no occasion to discuss it further here. We are reversing the judgment to the extent that it voided Financial Freedom's senior lienor status on the property, and thus no adverse economic impact attends the court's order awarding fees to the Association against the homeowners. Financial Freedom's objection to the fee award is therefore moot.

## III. DISPOSITION

The June 3, 2009 judgment in favor of Financial Freedom is affirmed. The August 17, 2009 judgment in favor of the Association is reversed to the extent that it voided, in whole or part, Financial Freedom's deed of trust on the property. The case is remanded with directions to amend the judgment consistent with the views expressed in this opinion, and to permit Financial Freedom an opportunity to address the court concerning amendment at any hearing conducted on the matter.

The September 24, 2009 order denying Financial Freedom attorney fees against the Association is affirmed. The February 8, 2010 order granting the Association attorney fees against Williams and Crosby is affirmed.

The parties shall bear their own costs and attorney fees incurred on these appeals.

Ruvolo, P. J., and Rivera, J., concurred.

The petition of appellant Diamond Heights Village Association, Inc., for review by the Supreme Court was denied September 21, 2011, S194830. Werdegar, J., did not participate therein.