Filed 11/6/13  Ulllman v. Hollywood Dell First Mort. Investors CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| JEFFREY ULLMAN, | B246603 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC442576) |
| v. | |
| HOLLYWOOD DELL FIRST MORTGAGE INVESTORS, LP et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Victor E. Chavez, Judge.  Affirmed as modified.

Leonard, Dicker & Schreiber, Richard C. Leonard, and Steven A. Schuman for Plaintiff and Appellant.

Songstad Randall Coffee & Humphrey, L. Allan Songstad, Jr., and Linda D. Pasin for Defendants and Respondents.

Following a bench trial on plaintiff and appellant Jeffrey Ullman's complaint for declaratory relief and fraudulent conveyance, the superior court entered judgment for defendants and respondents Hollywood Dell First Mortgage Investors, LP (Hollywood Dell), and Carl Lindros as "Trustee of the Carl Lindros IRA"[1] (jointly, defendants). In this appeal from the judgment, Ullman contends the trial court erred in denying declaratory relief and dismissing the fraudulent conveyance claim. For the reasons that follow, we affirm the dismissal of the fraudulent transfer claim, but modify the judgment to reflect that the dismissal is with prejudice. The judgment, as modified, is affirmed.

## BACKGROUND

In a prior action, Ullman sued his former business partner, Rebecca Richards, for dissolution of partnership and other claims. (*Ullman v. Richards* (Super. Ct. L.A. County, 2009, No. BC392003).) After obtaining a $1.2 million judgment against Rebecca, Ullman recorded an abstract of judgment on April 10, 2009.[2] Rebecca's

---

[1]     We note that Lindros answered the complaint as "Carl Lindros, Trustee of the Lindros Family Trust dated December 17, 1982."

[2]     "Except as otherwise provided by statute, a judgment lien on real property is created under this section by recording an abstract of a money judgment with the county recorder." (Code Civ. Proc., § 697.310, subd. (a).)
    "Except as provided in Section 704.950: [¶] (a) A judgment lien on real property attaches to all interests in real property in the county where the lien is created (whether present or future, vested or contingent, legal or equitable) that are subject to enforcement of the money judgment against the judgment debtor pursuant to Article 1 (commencing with Section 695.010) of Chapter 1 at the time the lien was created, but does not reach rental payments, a leasehold estate with an unexpired term of less than two years, the interest of a beneficiary under a trust, or real property that is subject to an attachment lien in favor of the creditor and was transferred before judgment. [¶] (b) If any interest in real property in the county on which a judgment lien could be created under subdivision (a) is acquired after the judgment lien was created, the judgment lien attaches to such interest at the time it is acquired." (Code Civ. Proc., § 697.340.)

2

husband, Rob Richards, was not a party to that action,[3] but Ullman contends that his judgment lien attached to the interests of both spouses in all community real property located in this county.[4]

In the present action, Ullman seeks declaratory relief to establish that as to Rob's former 25 percent community property interest (Rob's interest) in certain real properties (properties),[5] Ullman's judgment lien is not subject to defendant's first and second deeds of trust, even though they were recorded first in 2008. Although Ullman concedes that his judgment lien, which was recorded in 2009, is subject to the deeds of trust with regard to Rebecca's 75 percent interest in the properties, he argues that as to Rob's interest, the usual rule of priority based on the date of recording does not apply. Ullman asserts that because of an error (which we will explain) that occurred when Hollywood Dell's loan was issued, neither Hollywood Dell's first deed of trust nor Lindros's second deed of trust attached to Rob's interest and, therefore, Ullman's judgment lien was the first and only lien that attached to Rob's interest.

---

[3]  Neither Rebecca nor Rob is a party to this action. Because they share the same last name, we refer to them by their first names with no disrespect intended.

[4]  "'Debt' means an obligation incurred by a married person before or during marriage, whether based on contract, tort, or otherwise." (Fam. Code, § 902.)
"Except as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt." (Fam. Code, § 910, subd. (a).)

[5]  The subject properties are "a large house located at 2110 Alcyona Drive, Los Angeles, California (the 'Alcyona Property') and two adjacent undeveloped lots in the Hollywood Hills (the 'Vine St. Lots')."
The trial court did not determine whether Rob had an ownership interest in the subject properties when the loans were issued and, if so, the nature or extent of that interest. Accordingly, we express no opinion on that point and, like the trial court, assume, for purposes of discussion only, that Rob had a 25 percent community property interest in the subject properties when the deeds of trust were signed by Rebecca.

3

Because the properties were sold at a nonjudicial foreclosure sale over three years ago, it is unclear what, if any, relief may be obtained by Ullman at this late date. In any event, in the following sections we discuss (1) the significant dates and events, (2) Ullman's and (3) defendants' contentions at trial, (4) the trial court's ruling, (5) Ullman's motion to set aside that ruling, and (6) the judgment for defendants.

## I.  Significant Dates and Events

In 2007, Rebecca and Rob acquired the subject properties as joint tenants. Later that year, Rebecca and Rob granted Ullman, Rebecca's business partner, a 50 percent interest in the properties, which Rebecca intended to renovate.

In 2008, Rebecca sought to refinance the properties with a new lender, Hollywood Dell. Hollywood Dell agreed to make a $4.1 million loan secured by a first deed of trust to the property, provided certain conditions were met. The conditions, as specified in the instructions to First American Title Company (FATCO or escrow company), required FATCO to:  (1) prepare and record "Quit Claim Deeds duly executed by **Rob Richards, husband of Rebecca L. Richards,** and **Jeffrey C. Ullman Separate Property Trust**"; (2) obtain a lender's title insurance policy; and (3) prepare and record a $4.1 million first deed of trust to the properties signed by "**Rebecca L. Richards, a married woman as her sole and separate property**."

In partial satisfaction of the loan requirements, (1) Ullman transferred his interest in the properties to Rebecca,[6] and (2) First American Title Insurance Company (FATICO or title insurance company) issued a lender's title insurance policy that guaranteed and insured that Rebecca had clear title and was the sole owner of the properties.

However, due to an error by the escrow company, the $4.1 million loan was issued to Rebecca, as sole borrower, without the required quitclaim deeds from Rob.

---

[6]     Rebecca and Ullman signed and recorded a grant deed on April 18, 2008, by which Rebecca (as to an undivided 50 percent interest) and Ullman (as to an undivided 50 percent interest) granted title to the properties to "Rebecca L. Richards, a married woman as her sole and separate property."

4

Hollywood Dell's first deed of trust, which Rebecca had signed as "Rebecca L. Richards, a married woman as her sole and separate property," was recorded on April 30, 2008.

In August 2008, Rebecca obtained a $450,000 loan from Lindros, which was secured by a second deed of trust that was recorded on September 5, 2008. FATICO issued a lender's title insurance policy that guaranteed and insured that Rebecca had clear title and was the sole owner of the properties.

On March 24, 2009, Ullman obtained a $1.2 million judgment against Rebecca in the partnership action. On April 10, 2009, Ullman recorded the abstract of judgment.

By April 2009, Rebecca had defaulted on the loans from Hollywood Dell and Lindros. On April 30, 2009, Hollywood Dell began nonjudicial foreclosure proceedings against the properties.

During the foreclosure process, it came to light that the escrow company had failed to obtain and record the required quitclaim deeds from Rob. Because the title insurance company had guaranteed that Rebecca was the sole owner of the properties, Hollywood Dell and Lindros sued the title insurance company for breach of contract and breach of the implied covenant of good faith and fair dealing. (*Hollywood Dell First Mortgage Investors, L.P. et al. v. First American Title Insurance Company et al.* (Super. Ct. Santa Barbara County, 2010, No. BC1338788) (title insurance action).) They alleged in their complaint that because Rebecca "was and is not the only record title holder," they did not have a "true security interest in the propert[ies]" and could "not possibly foreclose on the propert[ies]."

In June 2009, Rob filed a bankruptcy action. In May 2010, the bankruptcy court filed an order "abandoning any interest Rob may have had in the Properties." On May 20, 2010, Rob executed the grant deeds that transferred his interest in the properties to Rebecca.

On July 28, 2010, Ullman filed the present action against Hollywood Dell and Lindros for declaratory relief (seeking to establish the seniority of his judgment lien as to Rob's interest in the properties) and fraudulent conveyance (seeking to set aside the May 2010 transfer of Rob's interest in the properties to Rebecca).

5

In August 2010, Hollywood Dell and Lindros settled the title insurance action. In the settlement, Hollywood Dell and Lindros received $850,000 plus a defense and indemnity in this action. The settlement agreement stated in relevant part that the $850,000 payment "includes payment for losses incurred by Hollywood Dell and Lindros IRA for being unable to foreclose their respective deeds of trust against the Subject Properties through approximately mid October 2010, when it is anticipated that the new foreclosure sale date will be scheduled on the $4.1 million deed of trust."

On October 28, 2010, Hollywood Dell acquired the properties by making a $2.5 million credit bid at the trustee's foreclosure sale.

On November 6, 2012, the superior court conducted a one-day bench trial on Ullman's complaint in this action for declaratory relief and fraudulent conveyance. In addition to the above facts, which were presented primarily by joint stipulation, the trial court heard Rob's testimony that: (1) he had no beneficial interest in the properties and "had absolutely no participation in the real estate whatsoever"; (2) he had no objections to the loans taken by Rebecca; (3) when Rebecca obtained the loans from Hollywood Dell and Lindros, he believed he "had signed quitclaims on everything and the properties were the sole property of Rebecca Richards as an individual"; (4) it was his "intent to be off of all the deeds"; and (5) he did not learn he was still on title to the properties until "after Mr. Ullman initiated all this litigation."

## II.    Ullman's Contentions

At trial, Ullman contended that he was entitled to declaratory relief based on two theories. First, because Rob still had an interest in the properties when Rebecca signed the deeds of trust, Rebecca's signature alone was insufficient to encumber Rob's interest. (Fam. Code, § 1102.)[7]  When Ullman recorded his abstract of judgment in 2009, his lien

---

[7]    "Except as provided in Sections 761 and 1103, either spouse has the management and control of the community real property, whether acquired prior to or on or after January 1, 1975, but both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest

6

attached to Rob's interest in the properties, and remained affixed to Rob's interest when it was transferred to Rebecca in May 2010. (Code Civ. Proc., § 697.390.)[8]

Ullman also argued he was entitled to declaratory relief under the doctrine of judicial estoppel. Ullman contended defendants were bound by their concession in the title insurance action that, due to the existence of Rob's interest in the properties, they did not have a "true security interest in the propert[ies]" and could "not possibly foreclose on the propert[ies]."

Alternatively, Ullman contended the May 2010 transfer of Rob's interest to Rebecca should be set aside as a fraudulent conveyance. Ullman argued that "because Rob Richards was in bankruptcy at the time of the transfer, was admittedly insolvent, and received no consideration for the transfer, Rob's transfer to Rebecca was a fraudulent conveyance and Plaintiff has the right to set it aside."


## III.   Defendants' Contentions

### A.   *Declaratory Relief*

In opposition to Ullman's claim for declaratory relief, defendants argued their deeds of trust were senior to the judgment lien for two main reasons.

First, they argued that Rebecca was authorized to encumber Rob's interest, but in any event, an unauthorized encumbrance of community property is not void, but merely voidable at the request of the other spouse or his or her representative. Because Rob was aware of and had acquiesced to the deeds of trust, the trustee's sale was valid as to Rob's interest in the properties. (Citing *Clar v. Cacciola* (1987) 193 Cal.App.3d 1032, 1036-1037 (*Clar*); *Miller v. Johnston* (1969) 270 Cal.App.2d 289, 300, fn. 6.)

---

therein is leased for a longer period than one year, or is sold, conveyed, or encumbered." (Fam. Code, § 1102, subd. (a).)

[8]    Code of Civil Procedure section 697.390 provides in relevant part: "If an interest in real property that is subject to a judgment lien is transferred or encumbered without satisfying or extinguishing the judgment lien:  [¶]  (a)  The interest transferred or encumbered remains subject to a judgment lien created pursuant to Section 697.310 in the same amount as if the interest had not been transferred or encumbered."

7

Second, defendants argued that Ullman was barred, under the doctrine of judicial estoppel, from taking unfair advantage of the escrow company's error in failing to obtain and record Rob's quitclaim deed before the $4.1 million loan was issued. Defendants contended that as Rebecca's business partner with respect to the properties, Ullman was privy to the lender's requirement that all other interests must be cleared from title before the $4.1 million loan would issue. And because Ullman had transferred his own interest to Rebecca in accordance with the lender's instructions, he should be charged with the knowledge that Hollywood Dell would not have issued the loan based on the signature of only one spouse if it had known of the escrow company's error in failing to obtain and record Rob's quitclaim deed.

### B.    *Fraudulent Conveyance*

Defendants argued the transfer of Rob's interest in the properties to Rebecca should not be set aside as fraudulent for the following reasons. First, the claim must fail because of Ullman's failure to join Rebecca, a necessary party. In a claim for fraudulent transfer, the transferee is a necessary party who must be given an opportunity to defend the transfer. (Citing *Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 304-305.)

Second, the transfer did not place Rob's interest beyond Ullman's reach. If, as Ullman contends, his judgment lien was the senior lien, the transferred interest remained subject to that lien. (Citing Code Civ. Proc., § 697.390 [the transferred interest remains subject to any lien against the property].)

Third, nothing of value is conveyed by the transfer of real property that is fully encumbered by a valid lien. The properties, which were fully encumbered by the deeds of trust, had no equity. Accordingly, the transfer of Rob's interest was not fraudulent because nothing of value was conveyed through the transfer.

8

## IV.     The Trial Court's November 15, 2012 Ruling

After taking the matter under submission, the superior court issued its November 15, 2012 ruling in favor of Hollywood Dell and Lindros.  The court stated in relevant part:  "As to the first cause of action for Declaratory Relief, plaintiff seeks a determination that the Abstract of Judgment is senior to the liens, if any, of Lindros and Hollywood Dell as to Rob's 25% interest in the property.  [¶]  The first cause of action for Declaratory Relief is based upon allegations that as of April 18, 2008, title for the properties was in the name of [Rebecca] as to 75% and [Rob] as to the remaining 25%.  Plaintiff's claim of a superior lien fails in that defendants' deeds of trust encumbered 100% of the property.  Plaintiff is not entitled to declaratory relief."

In rejecting Ullman's fraudulent conveyance claim, the court stated in relevant part:  "As to the second cause of action for Fraudulent Conveyance, plaintiff moves for an order setting aside the transfer of Rob's 25% interest in the property, and instead directing that the sheriff sell those interests at public auction, with the proceeds to be applied to the judgment.  [¶]  The second cause of action for Fraudulent Conveyance fails in that [Ullman] dismissed the transferee to the alleged fraudulent transfer.  At trial, [Rob] testified that while he might be on title to the properties prior to defendant making the loans, he claimed no beneficial interest in the property and was under the impression the property belonged to [Rebecca].  [Rob] attempted to remove himself from the title and executed quitclaim deeds to [Rebecca].  His belief was that he was thus removed from title to the property.  [Rob] never claimed an interest in the property.  It was his belief that it belonged to [Rebecca].  [¶]  Here, the alleged fraudulent transferee to the May 2011 transfer was [Rebecca].  Therefore, she is a necessary party to [Ullman's] second cause of action for fraudulent conveyance; she is an indispensable party to Plaintiff's second cause of action. [Rebecca's] rights would be necessarily affected by any judgment setting aside the May 2011 transfer because any such judgment sets aside a conveyance of  real property to her.  [Ullman] dismissed [Rebecca] from this action on February 23, 2011.  Therefore, because [Ullman] has failed to include all necessary,

9

indispensable parties, namely [Rebecca], [Ullman's] second cause of action for fraudulent conveyance fails as a matter of law."

## V.     Ullman's Motion to Set Aside the November 15, 2012 Ruling

Ullman moved to set aside the November 15, 2012 ruling as legally incorrect. Ullman requested a ruling on his claim for judicial estoppel, arguing that defendants were bound by their position in the title insurance action that they did not have a valid lien as a result of Rob's interest in the properties. Ullman also requested a ruling on his claim that, under Code of Civil Procedure section 697.340, subdivision (b), his judgment lien was the first lien to attach to Rob's interest in the properties and, under section 697.390, remained attached to any interest transferred from Rob to Rebecca.

As to the fraudulent conveyance claim, Ullman requested findings that: (1) Rebecca was not an indispensable party because she no longer owned the properties and, therefore, her rights would not be negatively impacted by any judgment in this case; (2) Hollywood Dell and Lindros "failed to meet their burden of proof with respect to [Rebecca's] role"; and (3) Hollywood Dell and Lindros "failed to raise the issue of [Rebecca's] role as a 'necessary' party prior to trial and have thus waived it."

## VI.    Judgment for Hollywood Dell and Lindros

After the trial court denied Ullman's motion to set aside its ruling, it entered judgment for defendants on December 6, 2012.  The judgment stated in relevant part: "Judgment is entered in favor of Defendants and against Plaintiff on the First Cause of Action for Declaratory relief alleged in Plaintiff's Complaint.  Defendants' deeds of trust are prior to and senior to the abstract of judgment recorded by Plaintiff."  "The Second Cause of Action for Fraudulent Conveyance is dismissed without prejudice as the claim failed to include an indispensable party, i.e., Rebecca Richards."  This timely appeal followed.

## DISCUSSION

### I.  No Statement of Decision Was Required

Ullman contends the trial court failed to issue a statement of decision that explained:  (1) why Rebecca was a necessary party given that she no longer owned the properties; and (2) why defendants were not bound under the doctrine of judicial estoppel by their position in the title insurance action that they did not have a valid lien because of Rob's interest in the properties.  Ullman contends the trial court "completely ignored" these issues in its "statement of decision," and that the "failure to rule [on the issue of judicial estoppel] constitutes reversible error *per se*, unless this Court of Appeal finds that as a matter of law, the trial court had no choice but to reject judicial estoppel."

Defendants, on the other hand, argue that no statement of decision was required.  Where, as here, the trial is completed in a day or less, a request for a statement of decision must be made before the matter is submitted for decision.  (Code Civ. Proc., § 632.)[9]  Ullman's motion to set aside the November 15, 2012 ruling was not a timely request for a statement of decision because it was not made before the matter was submitted.

We conclude defendants are correct that Ullman did not timely request a statement of decision and, thus, no statement of decision was required.  Because a statement of decision was not required, the trial court had no obligation to provide the requested explanations.

---

[9]    Code of Civil Procedure section 632 provides in relevant part:  "In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required.  The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial.  The request must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision.  The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision.  After a party has requested the statement, any party may make proposals as to the content of the statement of decision."

11

"When no statement of decision is requested and issued, we imply all findings necessary to support the judgment. (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928.)" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) In the absence of specific findings in favor of a losing plaintiff, the appellate court will presume the trial court found the plaintiff's evidence was insufficient to carry the burden of proof. Code of Civil Procedure section 634,[10] which applies when the court is required but fails to provide a statement of decision, does not apply here.

## II.     Ullman's Judgment Lien Is Subject to the Deeds of Trust

In rejecting Ullman's claim for declaratory relief, the trial court stated that "Defendants' deeds of trust are prior to and senior to the abstract of judgment recorded by Plaintiff." Ullman contends this ruling was erroneous as a matter of law for two reasons, both of which involve the escrow company's error in failing to obtain and record Rob's quitclaim deed before the $4.1 million loan was issued in Rebecca's name alone:

(1) Because of the escrow company's error, Rob still had an interest in the property and therefore Rebecca's signature alone was insufficient to encumber Rob's interest. (Fam. Code, § 1102.) Accordingly, Ullman's judgment lien was the first lien that attached to Rob's interest and remained attached to that interest when it was transferred to Rebecca in May 2012.

(2) Defendants, having argued in the title insurance action that foreclosure was impossible due to the escrow company's failure to obtain and record Rob's quitclaim deed, were bound by that position under the doctrine of judicial estoppel.

We conclude both contentions lack merit.

---

[10]     Code of Civil Procedure section 634 provides: "When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 [motion for new trial] or 663 [motion to set aside judgment], it shall not be inferred on appeal or upon a motion under Section 657 or 663 that the trial court decided in favor of the prevailing party as to those facts or on that issue."

A.    *Ullman Lacked Standing to Challenge Rebecca's Authority to Encumber Rob's Interest*

By failing to obtain Rob's quitclaim deed, the escrow company failed to eliminate the possibility that Rob could object under Family Code section 1102 to Rebecca's authority to encumber his interest. "The cases interpreting [former Civil Code] section 5127[, now found in Family Code section 1102,] and its statutory predecessors have held that unauthorized gifts, sales or encumbrances of community property are not void, but voidable, and this only at the instance of the other spouse or his or her personal representative. (*Harris v. Harris* (1962) 57 Cal.2d 367, 369-370; *Head v. Crawford* (1984) 156 Cal.App.3d 11, 17-18; *Andrade Development Co. v. Martin* (1982) 138 Cal.App.3d 330, 333-335 and fn. 2 (*Andrade*); *Mitchell v. American Reserve Ins. Co.* (1980) 110 Cal.App.3d 220, 223 (*Mitchell*); *Gantner v. Johnson* (1969) 274 Cal.App.2d 869, 876-877; *Horton v. Horton* (1953) 115 Cal.App.2d 360, 364.)" (*Clar*, *supra*, 193 Cal.App.3d at p. 1036.)

Rob, the only person with standing to object to Rebecca's authority under Family Code section 1102, failed to do so.[11] Family Code section 1102 was not intended to protect creditors such as Ullman, who had no standing to object that Rebecca was unauthorized to encumber Rob's interest. Family Code section 1102 "was designed to protect a spouse from the unauthorized alienation or encumbering of marital property by the other spouse; it has never been interpreted in such a way as to provide a means

---

[11]    The record is devoid of any evidence that Rob objected to the deeds of trust or the trustee's sale of the properties. On the contrary, Rob testified that he had no beneficial interest in the properties, which he viewed as Rebecca's sole property. Rob stated that he believed he "had signed quitclaims on everything," it was his "intent to be off of all the deeds," he had no objections to the loans taken by Rebecca, and he did not learn of the error regarding the deeds to the properties until "after Mr. Ullman initiated all this litigation."

13

whereby a third party creditor of the married couple may challenge and void instruments signed by only one of the spouses." (*Clar*, *supra*, 193 Cal.App.3d at p. 1037.)[12]

B.   *Ullman's Lien Is Subject to the Deeds of Trust Under the Theory of Equitable Estoppel*

We also conclude that because Ullman had constructive if not actual knowledge that Hollywood Dell was relying on 100 percent of the properties as security for the $4.1 million loan, his judgment lien is subject to the deeds of trust under the theory of equitable estoppel. (See 5 Miller & Starr, Cal. Real Estate (3d ed. 2009) § 11:59 ["A title or lien of a subsequent party is subject to prior unrecorded interests in the property of which he has actual knowledge or notice, even though he or she records the deed or security instrument first."].) Ullman held a 50 percent interest in the properties that he transferred to Rebecca to facilitate the loan from Hollywood Dell. As Rebecca's business partner, Ullman was privy to the loan requirements and knew or reasonably should have known the loan was contingent on the escrow company's receipt and recording of Rob's quitclaim deed.

---

[12]   Two of the cases cited in *Clar*, *supra*, 193 Cal.App.3d at page 1036—*Mitchell*, *supra*, 110 Cal.App.3d 220, and *Andrade*, *supra*, 138 Cal.App.3d 330—were analyzed in *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26. Under *Mitchell*, the nonconsenting spouse may invalidate the transfer as to the nonconsenting spouse's one-half interest only. Under *Andrade*, the nonconsenting spouse may invalidate the transfer entirely. In *Droeger*, the Supreme Court held that the *Andrade* line of cases was correct.

In response to the Supreme Court's decision in *Droeger*, the Legislature enacted former sections 4372 and 4373 of the Civil Code (now found in Fam. Code, §§ 2033 & 2034), which allow a spouse to encumber his or her interest in community real property to pay attorney fees and costs in a proceeding for dissolution of marriage, nullification of marriage, or legal separation of the parties. (See *In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 346-347.)

Notwithstanding these legislative amendments and judicial decisions, the appellate court's decision in *Clar*, *supra*, 193 Cal.App.3d at page 1036—that former Civil Code section 5127 (now found in Fam. Code, § 1102) was not intended to protect creditors such as Ullman—remains good law.

14

The evidence is overwhelming that, but for the unforeseen errors by the escrow and title companies, Rob's quitclaim deed would have been recorded before the close of escrow, such that the deeds of trust would have indisputably attached to Rebecca's 100 percent interest in the properties. It was only through inadvertence that Rob's quitclaim deed went unrecorded, which created the discrepancy that Ullman relies upon to invalidate the deeds of trust as to Rob's interest.

### C. Defendants Did Not Take Inconsistent Positions

Ullman argues that under the doctrine of judicial estoppel, defendants are bound by their position in the title insurance action that, because of Rob's interest in the properties, foreclosure was impossible. We conclude the contention lacks merit.

"Judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, '"prevents a party from 'asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'"' (*Daar & Newman v. VRL International* (2005) 129 Cal.App.4th 482, 490-491 (*Daar & Newman*).) The dual purposes for applying this doctrine are '"'to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies.'"' (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986.) Judicial estoppel 'is intended to prevent litigants from ""'"playing "fast and loose with the courts."'"' [Citation.]" [Citation.] It is an "'extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'"' (*Daar & Newman, supra,* at pp. 490-491.)" (*Levin v. Ligon* (2006) 140 Cal.App.4th 1456, 1468.) The trial court's ruling on the judicial estoppel claim is reviewed under the abuse of discretion standard. (*Ibid.*)

We conclude the positions taken by defendants in the present action and the prior title insurance action were not inconsistent. The language used by defendants in the prior action must be viewed in light of the existing circumstances. After defendants discovered the escrow company's failure to obtain and record Rob's quitclaim deed, they sued the title insurance company for breach of contract because, contrary to the provisions of the policy, Rebecca's title was vulnerable to a possible objection by Rob under Family Code

15

section 1102 that she was unauthorized to encumber his interest. But after Rob's grant deeds were recorded, Hollywood Dell proceeded with the foreclosure proceedings and acquired the properties at the October 2010 trustee's sale. By the time this action was tried, defendants were no longer at risk of an objection under Family Code section 1102, because Rob had transferred his interest to Rebecca and waived any objection to the foreclosure sale.

Given the changed circumstances from August 2009, when the title insurance action was filed, to November 2012, when this case was tried, it was well within the trial court's discretion to reject Ullman's judicial estoppel claim. Justice would not have been served by forcing defendants to argue that foreclosure was impossible when, in fact, the properties had been sold at the October 2010 foreclosure sale. Ullman has failed to establish an abuse of discretion.

## III. The Fraudulent Transfer Claim Is Moot

Ullman challenges the trial court's dismissal of the fraudulent conveyance claim without prejudice based on the failure to join an indispensible party. In light of our determination that Ullman's judgment lien is subject to the deeds of trust under the doctrine of equitable estoppel, the validity of the May 2010 transfer is a moot issue. Because the claim is moot, the judgment is modified to indicate that the dismissal is with prejudice.

16

## DISPOSITION

The judgment is modified to indicate that the dismissal of the fraudulent transfer claim is a dismissal with prejudice. As modified, the judgment is affirmed. Defendants are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

SUZUKAWA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

17