Filed 9/22/14  American Master Lease v. Idanta Partners CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| AMERICAN MASTER LEASE LLC,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>IDANTA PARTNERS, LTD. et al.,<br><br>Defendants and Respondents. | B247478<br><br>(Los Angeles County<br>Super. Ct. No. BC367987) |

APPEAL from an order of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Affirmed.

Mayer Brown, Donald Falk; Mayer Brown, Neil M. Soltman and Germain D. Labat for Plaintiff and Appellant.

Lathrop & Gage, John Shaeffer, Jeffrey Grant and Emily Birdwhistell for Defendants and Respondents.

————————————

## INTRODUCTION

Plaintiff American Master Lease LLC (AML) appeals from a postjudgment order denying its motion to recover attorneys' fees from defendants Idanta Partners, Ltd., David J. Dunn, Steven B. Dunn, and the Dunn Family Trust.  In defendants' prior appeal we affirmed the judgment as to liability but reversed as to the amount of recoverable unjust enrichment and ordered a new trial on that issue.  (*American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451 (*AML I*).)  We now affirm the order denying AML's motion for attorneys' fees.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Underlying Litigation*

Neal Roberts formed AML in 1998 for the purpose of investing in real estate using an investment vehicle known as a 1031 FORT.[1]  Roberts was AML's managing member. The other members of AML were Jim Andrews, Charles "Duke" Runnels (Runnels), and Michael Franklin.  AML was governed by an operating agreement (Operating Agreement), paragraph 3.9 of which provided:  "'The Members agree that the business of the LLC, either to sell AML Products . . . directly to purchasers or to sell AML Products indirectly through an accommodator as part of a tax-exempt transaction, is unique. . . . No Member, Principal of a Member or holder of an Economic Interest of a Member, may have any interest, directly or indirectly, in any business that offers to sell or exchange AML Products or is otherwise competitive with [AML], nor may any such Member, Principal or Economic Interest holder be employed by, or act as a consultant to, any such competitive business without the approval of a Majority In Interest of the Class A and

---

[1]      FORT stands for Fractionalized Ownership in Real estate Tax deferred, and 1031 is the section of the Internal Revenue Code applicable to real estate exchanges.

2

Class B Members, voting as a Class. . . .'" (*AML I*, *supra*, 225 Cal.App.4th at p. 1459, fn. omitted.)

In January 2000 Roberts, Andrews, Runnels, and Franklin entered into a management agreement with AML. Under this agreement, Roberts remained the managing member and chairman of the board, and Andrews, Runnels, and Franklin agreed to serve as the operational managers of AML (collectively the Operating Group). (See *AML I*, *supra*, 225 Cal.App.4th at p. 1460.)

David J. Dunn was the founder and managing general partner of Idanta, a venture capital firm, and trustee of the Dunn Family Trust. David Dunn's son, Steven, worked for Idanta for a period of time and was a partner in Idanta for some of that time. (*AML I*, *supra*, 225 Cal.App.4th at p. 1460.)

The Operating Group was looking for funding for AML and eventually met with David Dunn. In January 2004 David Dunn proposed that Idanta form and finance a new company in which Idanta would own 80 percent, Runnels and Franklin would own 15 percent and manage the company, and AML would own 5 percent. Roberts rejected this and a subsequent proposal. (*AML I*, *supra*, 225 Cal.App.4th at p. 1461.)

In approximately mid-March 2004 Runnels incorporated FORT Properties, Inc. (FPI). David Dunn had already arranged with Runnels and Franklin for an ownership interest in FPI for himself, the Dunn Family Trust, and Idanta. Pursuant to this arrangement, in April 2004 defendants purchased preferred shares in FPI. The Operating Group, on behalf of AML, then granted FPI a nonexclusive license to use AML's business method. (*AML I*, *supra*, 225 Cal.App.4th at pp. 1462-1463.)

Runnels and Franklin notified Roberts of the Operating Group's action. Roberts told them he believed their actions violated paragraph 3.9 of the Operating Agreement and that they had no authority to license AML's business method without his permission. Roberts also had his attorney convey his position to the Dunns and Idanta. FPI later cancelled the license agreement with AML and engaged in several FORT transactions without AML. (*AML I*, *supra*, 225 Cal.App.4th at pp. 1463-1465.)

3

In March 2007 AML filed this action against Idanta, the Dunn Family Trust, David Dunn, and Steven Dunn. AML's fourth amended complaint alleged causes of action for aiding and abetting breach of fiduciary duty, interference with contractual relations, unfair competition, and unjust enrichment. (*AML I*, *supra*, 225 Cal.App.4th at p. 1467.)

In June 2007 FPI agreed to repurchase the preferred stock it had sold to Idanta and the Dunn Family Trust. From March 2004 through December 2009 FPI experienced a net loss and never paid the full amount it had agreed to pay Idanta and the Dunn Family Trust for this repurchase of stock. (*AML I*, *supra*, 225 Cal.App.4th at p. 1466.)

In the litigation the trial court ruled on demurrer that AML had stated a cause of action for aiding and abetting a breach of fiduciary duty, rejecting defendants' argument that a defendant must owe an independent duty to the plaintiff in order to be liable for aiding and abetting a breach of that duty. The trial court sustained defendants' demurrer to AML's causes of action for unfair competition and unjust enrichment without leave to amend. At trial, there were disputes over the applicable statute of limitations and what the jury could consider in making an award based on unjust enrichment. The trial court ruled that AML's action was not barred by the statute of limitations and instructed the jury in a manner that was basically favorable to AML. (*AML I*, *supra*, 225 Cal.App.4th at pp. 1467-1469.)

On AML's cause of action for interference with contract, the jury found that Idanta, David Dunn, Steven Dunn, and the Dunn Family Trust knew about paragraph 3.9 of the AML Operating Agreement; they acted with the intent to disrupt the performance of paragraph 3.9; their conduct prevented the performance of paragraph 3.9 or made its performance more expensive or difficult; and their conduct was a substantial factor in causing harm to AML. The jury found, however, that AML's interference claim was barred by the statute of limitations, because AML had actual or constructive knowledge of the facts giving rise to the interference claim more than two years before AML filed its complaint. On AML's cause of action for aiding and abetting a breach of fiduciary duty, the jury found that Andrews, Runnels, and Franklin knowingly acted against AML's

4

interests, and without AML's informed consent, in forming FPI, and, as to Runnels and Franklin, working for and owning shares in FPI. The jury also found that defendants knew that Andrews, Runnels, and Franklin were going to breach their fiduciary duties to AML; defendants gave substantial assistance to Andrews, Runnels, and Franklin; and defendants' conduct was a substantial factor in causing harm to AML. The jury awarded AML restitution in the amount of $7,075,891. Defendants appealed from the judgment. (*AML I*, *supra*, 225 Cal.App.4th at pp. 1470-1471.)

### B. *Motion for Attorneys' Fees*

AML then filed a motion for attorneys' fees. AML argued that, even though defendants were not signatories to the Operating Agreement, AML was entitled to an award of attorneys' fees based on the attorneys' fees provision in the Operating Agreement.

Paragraph 14.19 of the Operating Agreement provided: "In the event of any litigation, arbitration or other dispute arising as a result of or by reason of this Agreement, the prevailing party in any such litigation, arbitration or other dispute shall be entitled to, in addition to any other damages asserted, its reasonable attorney's fees, and all other costs and expenses incurred in connection with settling or resolving such dispute. . . ." AML relied on Civil Code section 1717, subdivision (a) (section 1717(a)), which provides in pertinent part that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." AML reasoned that it was the prevailing party in the litigation; the action was "on the contract" because the fiduciary duties that defendants aided and abetted the breach of arose out of the Operating Agreement; and the Operating Agreement mandated an award of attorneys' fees.

The trial court denied AML's motion for attorneys' fees. The court found that, although AML was the prevailing party, its claims were "not grounded in contract." The court read the authorities cited by the parties and noted that "in each of those cases where attorney's fees were awarded to a non-signatory, the claim was for some form of breach of contract where the prevailing party was standing in the shoes of one of the contracting parties." AML appealed from this order.

C.      *Decision on Appeal in the Underlying Litigation*

On May 5, 2014 we filed our opinion following rehearing in the underlying litigation. On the issue whether defendants could be held liable for aiding and abetting a breach of fiduciary duty by Andrews, Runnels, and Franklin, we explained that "there are two different theories pursuant to which a person may be liable for aiding and abetting a breach of fiduciary duty. One theory, like conspiracy to breach a fiduciary duty, requires that the aider and abettor owe a fiduciary duty to the victim and requires only that the aider and abettor provide substantial assistance to the person breaching his or her fiduciary duty. [Citations.] . . . Courts impose liability for concerted action that violates the aider and abettor's fiduciary duty. [Citations.] The second theory for imposing liability for aiding and abetting a breach of fiduciary duty arises when the aider and abettor commits an independent tort. [Citations.] This occurs when the aider and abettor makes '"a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act."' [Citations.]

"AML proceeded on the second theory of aiding and abetting liability. AML pleaded and proved that defendants had actual knowledge of the fiduciary duties Andrews, Runnels, and Franklin owed to AML, that defendants provided the three fiduciaries with substantial assistance in breaching their duties, and that defendants' conduct resulted in unjust enrichment. Thus, the trial court did not err in ruling, on demurrer and in connection with the jury instructions, that defendants could be liable for aiding and abetting a breach of fiduciary duty even though they did not owe a fiduciary duty to AML." (*AML I*, *supra*, 225 Cal.App.4th at pp. 1477-1478, fn. omitted.)

6

On the issue whether the statute of limitations barred AML's breach of fiduciary duty cause of action, we stated that "[t]he fiduciary duties of Andrews, Runnels, and Franklin . . . were not created exclusively or even primarily by the Operating Agreement but were imposed by law on them as members and managers of AML. [Citations.] [¶] Moreover, AML did not allege that defendants aided and abetted by interfering with a contract. AML's fourth amended complaint mentioned a contractual provision, paragraph 3.9 of the Operating Agreement, and alleged that it formed the basis for AML's (ultimately unsuccessful) cause of action for interference with contract, but AML did not allege that the Operating Agreement was the basis of the aiding and abetting claim. Instead, the gravamen of AML's cause of action for aiding and abetting breach of fiduciary duty was that defendants provided substantial assistance for Andrews, Runnels, and Franklin in breaching their duties of loyalty as members and managers of AML. AML alleged that defendants acted with Andrews, Runnels, and Franklin 'to: a). wrongfully acquire rights to the AML patent for less than full value; b). hire Runnels and Franklin to execute the AML Business Method; and c). otherwise cause Runnels and Franklin to breach their fiduciary duties to AML without seeking or obtaining the requested permission of AML and Roberts, its majority owner and manager.' AML alleged that in February 2004 Andrews, Runnels, and Franklin 'were secretly aligned with the Defendants and had already commenced negotiating with Defendants,' 'surreptitiously forwarded [AML's] strategic negotiating points' to defendants, received financial incentives from defendants 'to breach their duties of loyalty to AML and its other member,' and 'incorporate[d] [FPI] for the unlawful purpose of using [FPI] as an operating company to exploit the patented AML Business Method without receiving valid authorization from AML and without adequately compensating AML.' AML also alleged that Runnels engaged in a classic example of a breach of the duty of loyalty by signing an unauthorized and undervalued licensing agreement on behalf of both contracting parties, AML and FPI. The fact that one of the breaches of fiduciary duty may also have been a breach of a provision of the Operating Agreement does not mean

7

the three defalcating fiduciaries only breached a provision of the Operating Agreement." (*AML I*, *supra*, 225 Cal.App.4th at pp. 1480-1481, fns. omitted.)

We noted that the limitations period for aiding and abetting breach of fiduciary duty is either three years, where the breach of fiduciary duty is based on fraud or deceit, or four years, under the "catchall provision" in Code of Civil Procedure section 343. (*AML I*, *supra*, 225 Cal.App.4th at pp. 1478-1479.)  We concluded that we did not need to decide which limitations period applied because "the gravamen of AML's aiding and abetting breach of fiduciary duty claim was not interference with a provision of the Operating Agreement," and therefore the "two-year statute of limitations for interference with contract did not apply."  (*Id.* at p. 1481.)

With respect to remedies, "[w]e agree[d] with AML that the restitutionary remedies of unjust enrichment and disgorgement are available for aiding and abetting breach of fiduciary duty."  (*AML I*, *supra*, 225 Cal.App.4th at p. 1481.)  We concluded, however, that the trial court gave erroneous instructions on the amount of restitution the jury could award.  (*Id*. at p. 1486.)  We reversed the judgment as to the amount of defendants' unjust enrichment and directed the trial court to grant a new trial on the issue of the amount of defendants' unjust enrichment only.  (*Id*. at p. 1494.)

## DISCUSSION

AML argues that it is entitled to attorneys' fees under section 1717(a) because its aiding and abetting fiduciary duty claims arise out of the non-competition provisions of paragraph 3.9 of the Operating Agreement and therefore are "on the contract."[2]  AML

---

[2]  This issue is ripe for adjudication.  Because we reversed the judgment as to the amount of defendants' unjust enrichment only, AML is still the prevailing party in the litigation and its entitlement to attorneys' fees is still at issue.  "'Ripeness' refers to the requirements of a current controversy. . . .  A controversy becomes 'ripe' once it reaches, 'but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.'  [Citation.]"  (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 59; accord, *Lockaway Storage v. County of Alameda* (2013)

argues that "[t]he claims on which [it] prevailed involve, arise from, and have their genesis in the AML Operating Agreement," that "the fiduciary duties underlying the aiding and abetting fiduciary breach claims arose as a result of the Operating Agreement," and that "[e]xecution of the Operating Agreement was necessary to create AML as a valid limited liability company." AML also contends that it is entitled to attorneys' fees because defendants requested attorneys' fees in their answer to the complaint and would have been entitled to attorneys' fees under section 1717(a) had they prevailed, even though they were not parties to the Operating Agreement. We conclude that, even if its claims were on or arose as a result of or by reason of the Operating Agreement, AML is not entitled to recover its attorneys' fees under section 1717(a) from defendants as nonsignatories to the Operating Agreement.

A.    *Standard of Review*

""""On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law."' [Citation.]" (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213; accord, *Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1025-1026; see *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894 ["the 'determination of the legal basis for an award of attorney fees' is a 'question of law' which the reviewing court will examine de novo"].) "'Whether section 1717 applies is a legal question . . . rather than a factual question'

---

216 Cal.App.4th 161, 174.) That the issue of the amount of restitution must be retried does not preclude us from issuing "a meaningful and realistically enforceable decision" (*Vandermost v. Bowen* (2012) 53 Cal.4th 421, 456) on the attorneys' fees issue. (See *Otay Land Co. v. Royal Indemnity Co.* (2008) 169 Cal.App.4th 556, 562 [controversy ripe for adjudication where court can provide """"specific relief through a decree of conclusive character"""""].)

9

[citation], which "'we review de novo. [Citation.]" [Citations.]' [Citation.]" (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1615.)

B.      *AML Is Not Entitled to Attorneys' Fees*

As a general rule, only parties to a contract containing an attorneys' fees provision are entitled to fees. "However, under some circumstances, the Civil Code section 1717 reciprocity principles will be applied in actions involving signatory and nonsignatory parties. [Citation.]" (*Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 966; accord, *Mepco Services, Inc. v. Saddleback Valley Unified School Dist.* (2010) 189 Cal.App.4th 1027, 1046.) "'"[I]n cases involving nonsignatories to a contract with an attorney fee provision, the following rule may be distilled from the applicable cases: A party is entitled to recover its attorney fees pursuant to a contractual provision only when the party would have been liable for the fees of the opposing party if the opposing party had prevailed." [Citation.]' [Citation.]" (*Loduca v. Polyzos* (2007) 153 Cal.App.4th 334, 341; see *Hsu v. Abbara* (1995) 9 Cal.4th 863, 870; *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128.) This is because section 1717 "is meant to prevent 'oppressive use of one-sided attorney's fees provisions' [citation], not to abolish the general rule that each party pay its own attorney fees." (*Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 308.) Therefore, under section 1717 AML can recover attorneys' fees from defendants, as nonsignatories to the Operating Agreement, only if defendants could have recovered attorneys fees from AML. (See *Reynolds Metals Co.*, *supra*, at pp. 128-129; *Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 679 [signatory cannot recover fees from nonsignatory unless nonsignatory could recover fees from signatory].)

"Two situations may entitle a nonsignatory party to attorney fees. First is where the nonsignatory party 'stands in the shoes of a party to the contract.' [Citation.] Second is where the nonsignatory party is a third party beneficiary of the contract." (*Cargill, Inc. v. Souza*, *supra*, 201 Cal.App.4th at p. 966; see *Apex LLC v. Korusfood.com* (2013) 222

Cal.App.4th 1010, 1017-1018 ["[a] nonsignatory will be bound by an attorney fees provision in a contract when the nonsignatory party "'stands in the shoes of a party to the contract"'"]; *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, *supra*, 162 Cal.App.4th at p. 897 ["where a nonsignatory is sued on the ground that he stands in the shoes of a party to the contract, and where he would be liable for fees if that claim succeeded, he may recover fees under section 1717 if he defeats the claim"].)  Defendants were not third party beneficiaries of the Operating Agreement.  (See *Blickman Turkus, LP*, *supra*, at p. 897 ["a nonsignatory seeking relief as a third party beneficiary may recover fees under a fee provision only if it appears that *the contracting parties intended* to extend such a right to one in his position"]; *Souza v. Westlands Water Dist.* (2006) 135 Cal.App.4th 879, 891 [third party beneficiary must show the contracting parties intended to benefit the third party, and "it is not enough that the third party would incidentally have benefited from performance" of the contract].)  Thus, defendants could have recovered attorneys' fees from AML (and therefore AML can recover attorneys' fees from defendants under section 1717(a)) only if defendants "stand in the shoes" of other parties to the Operating Agreement, Andrews, Runnels, and Franklin.

A nonsignatory may stand in the shoes of a party to an agreement "either by virtue of a preexisting relationship, or as an assignee or successor in interest."  (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1240, fn. 20; cf. *Diamond Heights Village Assn. v. Financial Freedom Senior Funding Corp.*, *supra*, 196 Cal.App.4th at p. 308 [third party not entitled to recover attorneys' fees under section 1717 where third party and contracting party were "complete strangers to each other"].)  Examples of preexisting relationships justifying the enforcement of contractual provisions against a nonsignatory defendant include employer and employee, principal and agent (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1357 [enforcing arbitration agreement]), general partner and limited partnership (*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1070 [enforcing arbitration agreement]), successor in interest (*Exarhos v. Exarhos* (2008) 159 Cal.App.4th 898, 906-907 [successor in interest to decedent who had signed a contract containing an attorneys'

11

fees provision], and surety (*National Technical Systems v. Superior Court* (2002) 97 Cal.App.4th 415, 425). A nonsignatory may also be liable for attorneys' fees on an alter ego theory or where the nonsignatory has assumed the obligations of a party to the contract. (See *Reynolds Metals Co. v. Alperson*, *supra*, 25 Cal.3d at pp. 128-129 [plaintiff would have been entitled to attorneys' fees from nonsignatory defendants had the plaintiff been able to prove the defendants were alter egos of defendant corporation]; *Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 823 ["[i]t is well settled a breach of contract claim based on alter ego theory is still a claim on the contract and a nonsignatory that successfully defends against the claim may recover its attorney fees under section 1717"]; see also *Apex LLC v. Korusfood.com*, *supra*, 222 Cal.App.4th at pp. 1017-1018 [nonsignatory defendant liable for attorneys' fees under a credit application submitted under its former name].

Here, there was no preexisting relationship between defendants and the Operating Group that would have allowed defendants to recover attorneys' fees under the Operating Agreement. It was not until six years after Roberts and the Operating Group had executed the Operating Agreement that defendants entered into a business relationship with the Operating Group. Nor were defendants alter egos or successors in interest of the Operating Group. Defendants did not assume the Operating Group's obligations under the Operating Agreement. Rather, defendants entered into an arm's length business transaction with the Operating Group by purchasing shares in FPI. The relationship between defendants and the Operating Group was not the type of relationship that courts have found justifies imposing contractual liability for attorneys' fees on a nonsignatory. Because defendants did not stand in the Operating Group's shoes with respect to the Operating Agreement, they would not have been entitled to an award of attorneys' fees had they prevailed.

*Lewis v. Alpha Beta Co.* (1983) 141 Cal.App.3d 29, cited by AML, is distinguishable. In that case, both the Lewises and Alpha Beta entered into written leases with the owner of a shopping center, and both of the leases contained attorneys' fees provisions. The Lewises' lease granted them the exclusive right to sell alcoholic

12

beverages in the shopping center. When Alpha Beta posted a notice of intention to sell alcoholic beverages, the Lewises sued Alpha Beta and the landlord. The trial court issued an injunction in favor of the Lewises and allowed them to recover attorneys' fees from Alpha Beta. (*Id*. at pp. 31-32.) The Court of Appeal stated, "We believe [section 1717's] provisions should also provide a remedy to individuals, such as the Lewises, who on the basis of their own lease, sue their landlord and a cotenant to enforce a restrictive covenant assumed by the cotenant for their benefit in its lease, when each such lease specifically provides for attorney's fees." (*Id.* at p. 33.) While the *Lewis* court did not specify the basis on which it upheld the award of attorneys' fees, it appears that the Court of Appeal relied on the existence of a preexisting relationship between the parties or the Lewises' status as third party beneficiaries of Alpha Beta's contract with the landlord. (See *ibid.*) Unlike the Lewises, defendants here were not third party beneficiaries of the Operating Agreement and they had no preexisting relationship with either AML or the Operating Group.

*Walsh v. New West Federal Savings & Loan Assn.* (1991) 234 Cal.App.3d 1539 is also distinguishable. In that case the Walshes entered into a real estate contract containing an attorneys' fees provision with Gallegos, who was supposed to arrange a transaction in which State Savings was going to transfer property to the Walshes. The transaction fell through, and the Walshes sued Gallegos and State Savings, which became insolvent and had its assets and liabilities acquired by New West. (*Id.* at pp. 1541-1542.) After New West prevailed, the trial court denied New West's request for attorneys' fees. (*Id*. at p. 1546.) In reversing, the Court of Appeal held that "the predicate of New West's liability as alleged in the Walshes' complaint is that State Savings acted as a coconspirator or in a principal/agency relationship with Gallegos. Assuming these allegations are true, the lack of a *direct* relationship is irrelevant. A coconspirator is liable as a joint tortfeasor 'irrespective of whether or not he was a direct actor and regardless of the degree of his activity.' [Citation.] Likewise a principal is liable to all persons who have relied upon an agent's ostensible authority, regardless of the lack of contact between the third party and the principal. [Citation.] The Walshes' attempts to

13

recover for Gallegos's failure to fulfill his promise to transfer certain of the bank's properties to them, . . . and for fraudulent representations allegedly made by Gallegos are unquestionably derived from the property exchange *agreement* between the Walshes and Gallegos, for which New West is alleged to be liable as a principal or coconspirator." (*Id.* at pp. 1545-1546, fn. omitted.) The court concluded that the "Walshes' breach of contract cause of action against New West falls within the purview of section 1717." (*Id.* at p. 1547.) Here, as explained in *AML I*, defendants were not liable as joint tortfeasors with or conspirators of the Operating Group but were independently liable for their tortious conduct. (*AML I*, *supra*, 225 Cal.App.4th at pp. 1477-1478.) Nor was there any liability based on a principal/agent relationship. *Walsh* does not support AML's assertion that defendants could have been liable for attorneys' fees and thus had a reciprocal right to attorneys' fees from AML under section 1717.

Finally, contrary to AML's assertion, the mere fact that defendants sought attorneys' fees in their answer to AML's fourth amended complaint does not compel application of the reciprocal remedy provision of section 1717(a). The "'bare allegation'" that a party is entitled to attorneys' fees under a contract provision is not sufficient to prove an entitlement to attorneys' fees; proof is required. (*Bear Creek Planning Committee v. Ferwerda* (2011) 193 Cal.App.4th 1178, 1188; accord, *Mepco Services, Inc. v. Saddleback Valley Unified School Dist.*, *supra*, 189 Cal.App.4th at p. 1047; see *Hyduke's Valley Motors v. Lobel Financial Corp* (2010) 189 Cal.App.4th 430, 436 ["mere fact [a party] pleaded a breach of contract cause of action is not dispositive" of the attorneys' fees issue]; *Myers Building Industries, Ltd v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 962, fn. 12 ["[w]hile it is true that [the appellant] requested attorney fees under the contract in its cross-complaint against [the respondent], mere allegation of a contractual right to attorney fees is not sufficient to create an estoppel where [the appellant] would not *actually* have been entitled to attorney fees under the contract if [the appellant] had prevailed"].) Defendants' request for attorneys' fees in their answer does not establish AML's right to attorneys' fees.

14

## DISPOSITION

The order is affirmed.  Defendants are to recover their costs on appeal.


SEGAL, J.[*]


We concur:



PERLUSS, P. J.



ZELON, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.