Filed 12/21/23  Larsen v. Sacor Financial CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| BRUCE E. LARSEN, | D082248, D082249 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CVRI2104157) |
| SACOR FINANCIAL, INC., | |
| Defendant and Respondent. | |

CONSOLIDATED APPEALS from an order and a judgment of the Superior Court of Riverside, Godofredo Magno, Judge.  Affirmed.

Law Office of Brian C. Unitt, Brian C. Unitt; Law Offices of Brian C. Pearcy and Brian C. Pearcy for Appellant.

Carlson & Messer, LLP, J. Grace Felipe, and Calvin W. Davis for Respondent.

National Credit Acceptance, Inc. (NCA) filed a debt collection action against Bruce E. Larsen and obtained a default judgment against him.  NCA then assigned the judgment to Sacor Financial, Inc. (Sacor).  When Sacor attempted to enforce the default judgment several years later, Larsen successfully moved to vacate the judgment.

Larsen then sued Sacor, NCA, and their attorneys for malicious prosecution and unfair debt collection practices. (See Civ. Code,[1] § 1788 et seq.). Sacor and its attorney, Joseph Scalia, filed motions to strike Larsen's complaint as a strategic lawsuit against public participation (SLAPP) under section 425.16. The court granted the anti-SLAPP motions and awarded Sacor attorney fees under section 425.16, subdivision (c).[2]

Larsen argues on appeal that the trial court should have found he adequately showed Sacor (1) lacked probable cause to seek enforcement of the default judgment, and (2) maintained the proceedings with malice.[3] Larsen also argues that the court erred in overruling his objections to a Sacor executive's declaration in support of Sacor's anti-SLAPP motion.

We conclude that Larsen has failed to demonstrate a probability of success on the merits because Sacor's attempts to enforce and preserve the default judgment against Larsen cannot form the basis of a malicious prosecution claim. We further conclude that even if Larsen could bring a malicious prosecution claim based on Sacor's actions, Larsen's evidence is insufficient to show Sacor acted with malice. We need not, and do not, decide whether the court erred in overruling Larsen's evidentiary objections.

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

[2] Section 425.16, subdivision (c), provides in relevant part that with limited exceptions, "a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs."

[3] Larsen only appeals the granting of Sacor's anti-SLAPP motion, not Scalia's, and only as to the malicious prosecution claim. Larsen also separately appeals the court's award of attorney fees to Sacor, and both appeals are consolidated here.

Accordingly, we affirm the trial court's order granting Sacor's anti-SLAPP motion and the order awarding Sacor attorney fees.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Underlying Litigation*

In October 2008, NCA purchased rights from Wells Fargo Bank, N.A. (Wells Fargo) to an approximately $30,000 debt owed by "Erick B Larsen." NCA filed a collection action against Larsen, listing "Erick B Larsen" as an alleged alias and obtained a default judgment in March 2009.

NCA assigned the judgment to Sacor in May 2013, and shortly thereafter, Sacor began seeking writs of execution to enforce the judgment. In the years following 2013, Sacor also sought to initiate debtor examinations and renew the judgment. Larsen did not appear in the proceeding until September 2020 after an abstract of judgment issued. Larsen moved to vacate and set aside the judgment, asserting that he was never served in the underlying collection action and that he never had a line of credit with Wells Fargo. Sacor opposed Larsen's motion, arguing that proper service was accomplished via substitute service to Larsen's UPS mailbox, and that Larsen's assertions regarding the alleged debt lacked credibility.

In October 2020, the trial court granted Larsen's motion to vacate and set aside the default judgment based on ineffective service of the underlying complaint. The court found no evidence that the UPS store where Larsen received mail had a written agreement with Larsen for acceptance of service as required under Code of Civil Procedure section 415.20, subdivision (c), which incorporates by reference Business and Professions Code section 17538.5, subdivision (d).[4] The court further found no evidence that UPS

---

[4]    Business and Professions Code section 17538.5, subdivision (d)(1), provides in relevant part that anyone using a private mailbox service is

3

mailed the collection action complaint to Larsen's last known home or personal address, as it was required to do. (Code Civ. Proc., § 415.20, subds. (b), (c); Bus. & Prof. Code, § 17538.5, subd. (d)(1).) For those reasons, the court concluded that service in the underlying collection action was not perfected, and the default judgment was therefore void. (See Code Civ. Proc., § 473, subd. (d).)

Through new counsel, Sacor moved to vacate the order setting aside judgment in November 2020, which the court denied in December 2020. Three weeks later, Sacor voluntarily requested and obtained dismissal of the underlying collection action without prejudice.

B. *Current Complaint*

Larsen filed a complaint against Sacor, NCA, and their attorneys in September 2021, alleging malicious prosecution and unfair debt collection practices. Larsen alleged in his malicious prosecution claim that NCA and its attorneys "commenced and prosecuted" the collection action "without probable cause," and that Sacor and Scalia "continued the prosecution of the action against [Larsen] without probable cause" by attempting to enforce the default judgment. Specifically, Larsen alleged that Sacor and Scalia had no probable cause to pursue enforcement because they did not investigate whether Larsen was the actual debtor.

---

"required to sign an agreement" authorizing the mailbox service owner or operator "to act as agent for service of process for the mail receiving service customer." That subdivision further provides that before service can be deemed perfected, upon receiving process for any mailbox service customer, the operator "shall (A) within 48 hours after receipt of any process, place a copy of the documents or a notice that the documents were received into the customer's mailbox or other place where the customer usually receives his or her mail . . . and (B) within five days after receipt, send all documents by first-class mail, to the last known home or personal address of the mail receiving service customer." (Bus. & Prof. Code, § 17538.5, subd. (d)(1).)

4

Sacor and Scalia filed anti-SLAPP motions, arguing that Larsen's complaint arises from protected activity, and that he could not establish a probability of prevailing in his malicious prosecution claim because: (1) the alleged conduct could not give rise to a claim for malicious prosecution; (2) their actions in enforcing the judgment were supported by probable cause; (3) they did not act with malice; and (4) there was no termination in Larsen's favor on the merits.

Larsen opposed their anti-SLAPP motions, conceding that the complaint arose from protected activity, but contending that he had a probability of succeeding on the merits of his malicious prosecution claim because: (1) Sacor and Scalia can be liable for continuing to prosecute the underlying collection action, (2) a voluntary dismissal generally constitutes a favorable termination or at least raises a question of fact, (3) Sacor and Scalia lacked probable cause to pursue a debt collection action against Larsen; and (4) they acted with malice.

After overruling Larsen's objections to declarations provided by Scalia and Sacor's Vice President, the court granted the anti-SLAPP motions. In ruling on Sacor's motion, the court explained that even without the contested supporting declarations, Larsen still failed to demonstrate a probability of success on the merits of his malicious prosecution claim. The court first found that Larsen adequately showed the underlying action terminated in his favor. The court further found, however, that his evidence was insufficient to prove a probability of success on the probable cause element because "Sacor was not involved in prosecuting the underlying action" and was only involved in enforcing the judgment, which it had no reason to believe was "not legally tenable." The court also found no evidence of malice, noting that Larsen's counsel first contacted Sacor 11 years after the judgment was entered, and

5

then shortly after the court vacated the judgment and Larsen sent discovery requests, Sacor voluntarily dismissed the underlying action.

On these grounds, the court ruled that Larsen did not meet his burden of showing a likelihood of prevailing on the merits of his malicious prosecution claim and granted Sacor's anti-SLAPP motion. The court also awarded Sacor attorney fees under section 425.16, subdivision (c). Larsen timely appealed the orders granting Sacor's anti-SLAPP motion and awarding attorney fees.

DISCUSSION

I

A. *Statutory Framework*

The anti-SLAPP statute provides in relevant part that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike [anti-SLAPP motion], unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Ruling on an anti-SLAPP motion involves a two-step process: first the court must decide whether the defendant has shown the challenged claim arises from activity protected by the anti-SLAPP statute, and if so, the court then must decide whether the plaintiff has shown a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67; *Sugarman v. Brown* (2021) 73 Cal.App.5th 152, 159.) Only a claim that both arises from protected activity and lacks merit is a SLAPP subject to being stricken. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*); *Weeden v. Hoffman* (2021) 70 Cal.App.5th 269, 282 (*Weeden*).)

6

We review a ruling on an anti-SLAPP motion de novo and engage in the same two-step process as the trial court. (*Park v. Board of Trustees of Cal. State Univ.* (2017) 2 Cal.5th 1057, 1067; *Weeden, supra*, 70 Cal.App.5th at p. 282.)

B. *Probability of Prevailing on Malicious Prosecution Claim*

It is undisputed that Larsen's malicious prosecution claim meets the first prong of the anti-SLAPP analysis because it arises from Sacor's protected speech or petitioning activity. (See *Navellier, supra*, 29 Cal.4th at p. 90, citing § 425.16, subd. (e)(1) [a claim for relief filed in court is "indisputably . . . a 'statement or writing made before a . . . judicial proceeding[.]' "].) Accordingly, we conclude that the first prong of the anti-SLAPP statute is met and focus on the second prong concerning Larsen's probability of prevailing.

1.     *Enforcing Judgment as a Basis for Malicious Prosecution*

Larsen argues that even though Sacor was not involved in initiating or maintaining the underlying collection action prior to judgment, Sacor can still be liable for malicious prosecution because it "took on the role of collection plaintiff." We disagree. Larson has failed to demonstrate a reasonable probability of success because Sacor's actions here cannot form the basis of a malicious prosecution action. (See *Kim v. R Consulting & Sales, Inc.* (2021) 67 Cal.App.5th 263, 267 [reaching the same conclusion regarding a malicious prosecution claim arising from a motion for an order to show cause].) Sacor neither initiated nor prosecuted the underlying action against Larsen to judgment; it merely attempted to enforce and preserve the default judgment after it was assigned to Sacor.

*Merlet v. Rizzo* (1998) 64 Cal.App.4th 53 (*Merlet*) is instructive. *Merlet* "involved application of the familiar rule that subsidiary procedural actions

cannot be the basis for malicious prosecution claims." (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 969, fn. 8.) In *Merlet*, a judgment debtor's husband sued the judgment creditor for malicious prosecution after the trial court denied the creditor's application for a writ of sale and also denied the creditor's motion for reconsideration. (*Merlet*, at pp. 57–58.) The trial court in *Merlet* sustained a demurrer to the plaintiff's malicious prosecution claim without leave to amend, ruling that the creditor's application for a writ of sale could not support the claim. (*Id.* at p. 58.) The Court of Appeal affirmed, reasoning that obtaining a writ of sale "occurs after liability and damages have been determined, and it does not result in a separate and distinct proceeding." (*Id.* at p. 61.)

The same reasoning applies here. As in *Merlet*, by requesting writs of execution, debtor examinations, and other procedural mechanisms to enforce a preexisting judgment, Sacor simply invoked remedial measures "which could not exist absent the judgment." (*Merlet*, *supra*, 64 Cal.App.4th at p. 61.) " 'A writ is an order in writing issued by a competent official in a judicial proceeding and, as applied to execution in civil cases, is part of the remedy to effectuate the action by the enforcement of the judgment.' [Citation.]" (*Id.* at pp. 61–62.) Specifically, only *after* entry of judgment and on application of a judgment creditor can the court clerk issue a writ of execution directed to the levying officer and to any registered process server. (§ 699.510, subd. (a); see *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1065 (*Rusheen*).)

Similarly, a debtor's examination is *incidental* to the main lawsuit and was originally established "as a substitute for the former creditor's suit . . . [which] was a cumbersome independent action . . . ." (8 Witkin, Cal. Procedure (5th ed. 2008) Enforcement of Judgment, § 277, pp. 302–303; see

8

Code Civ. Proc., § 708.110 [providing that a judgment creditor may apply "for an order requiring the judgment debtor to appear . . . to furnish information to aid in enforcement of the money judgment[]"].)  Thus, like a writ of sale or execution, the application for an examination order "occurs after liability has been determined and a judgment ordered," and is "not a separate proceeding[]" that can form the basis of a malicious prosecution claim. (*Merlet*, *supra*, 64 Cal.App.4th at p. 62.)

Nor can Sacor's opposition to Larsen's motion to vacate judgment expose Sacor to liability for malicious prosecution because this was a purely defensive action to preserve a facially valid judgment.  (See *Merlet*, *supra*, 64 Cal.App.4th at p. 59 ["Courts have concluded that subsidiary procedural actions or purely defensive actions cannot be the basis for malicious prosecution claims."].)  Sacor cannot be liable for opposing Larsen's motion to vacate because courts "have long 'refused to recognize a tort of malicious defense'[.] " (*Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 794, fn. 9, quoting *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 52 (*Bertero*).)  And unlike in *Bertero*, Sacor did not go "beyond purely defensive measures and file[] a cross-complaint," thereby " 'seeking affirmative relief' " and taking " 'the offensive in attempting to prosecute a cause of action of [its] own.' " (*Idell v. Goodman* (1990) 224 Cal.App.3d 262, 272, citing *Bertero*, at p. 53.)

Sacor also cannot be subject to a malicious prosecution suit for filing its motion to set aside the order vacating the judgment.  Much like the motion for reconsideration in *Merlet*, there is no indication that Larsen's hardship in opposing Sacor's motion "approach[ed] that suffered by litigants in a will contest or a full-blown lawsuit." (*Merlet*, *supra*, 64 Cal.App.4th at p. 63; cf. *Crowley v. Katleman* (1994) 8 Cal.4th 666, 692 [a will contest can form the basis of a malicious prosecution claim, even though it is dependent on the

9

filing of the petition to probate the will, because a will contest is a separate and distinct proceeding and "can dramatically transform the probate of a will from a routine ex parte procedure . . . into sharply adversarial and hotly contested litigation[]"].)  Sacor's motion to set aside the order, like a motion for reconsideration, also had "no meaning apart from the original motion" to vacate judgment, and therefore had "no separate existence and [was] not an independent proceeding" subject to a malicious prosecution claim.  (*Merlet*, at p. 64.)

Public policy reasons also support limiting Sacor's exposure to malicious prosecution for its actions in this case, especially given that Sacor's involvement began only after the trial court already entered judgment against Larsen.  In the judgment enforcement context, "modern public policy seeks to encourage free access to the courts and finality of judgments by limiting derivative tort claims arising out of litigation-related misconduct and by favoring sanctions within the original lawsuit.  [Citation.]"  (*Rusheen*, *supra*, 37 Cal.4th at p. 1063.)  As the Supreme Court noted when extending the litigation privilege to abuse of process claims, "the process itself of enforcing money judgments is subject to judicial supervision[]" and there are "alternative remedies for improper service and [] procedural protections against improper enforcement[,]" such as "successfully moving to set aside the default judgment[]" as Larsen did here.  (*Id.* at pp. 1064–1065.)  Allowing Sacor's actions to form the basis of a malicious prosecution claim "would permit a party to transform the statutory and summary procedure to enforce a judgment into a full-blown lawsuit.  The efficient administration of justice in this situation is to permit the court to supervise the collection procedure; if the procedure is abused, the appropriate remedy is to request sanctions." (*Merlet*, *supra*, 64 Cal.App.4th at pp. 61–62.)

10

Finally, we reject the fundamental premise of Larson's malicious prosecution claim—that Sacor was attempting to enforce an invalid debt that Larsen did not owe. As a matter of law, the alleged Wells Fargo debt was extinguished and superseded by the default judgment entered against Larsen before Sacor even entered the picture. A money judgment based on a debt supersedes the original debt and creates a new liability based on the judgment. (*Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 301–302.) Sacor's efforts to preserve and enforce a facially valid judgment against Larsen as an assignee were not an attempt to enforce the original Wells Fargo debt; they were an attempt to enforce the judgment. And Larsen does not dispute that the default judgment was against him.

Accordingly, because Sacor's actions in seeking to enforce and preserve the default judgment were not a valid basis for a malicious prosecution claim, we conclude Sacor's anti-SLAPP motion was properly granted.

2. *Probability of Proving Malice*

Even if Sacor's attempts to enforce the judgment could serve as a basis for a malicious prosecution claim, we conclude that Larsen would still fall short of satisfying the second prong of the anti-SLAPP statute because his evidence is insufficient to demonstrate a probability of prevailing against Sacor on such a claim. (*See Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1237.) To prevail in a malicious prosecution claim, the plaintiff must show the underlying action was: "(i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the . . . plaintiff; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice." (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775–776.)

11

We focus our analysis on malice because if Larsen's evidence is insufficient to show a probability of proving that element, his malicious prosecution claim cannot succeed. In *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260 (*Soukup*), the Supreme Court stated that the malice element of a malicious prosecution cause of action " 'relates to the *subjective intent or purpose* with which the defendant acted in initiating the prior action. [Citation.] The motive of the defendant must have been something other than . . . the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will or some *improper* ulterior motive.' [Citations.]" (*Id.* at p. 292.) Applying this standard, our task is to determine whether Larsen has presented sufficient evidence to establish a prima facie showing of malice by a preponderance of the evidence. (See *Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 522 (*Padres*) [at step two in anti-SLAPP analysis for malicious prosecution claim, plaintiff must make a prima facie showing that would permit a finding of malice based on preponderance of evidence standard].)

While lack of probable cause is one factor in determining the presence of malice, it is insufficient to prove malice by itself. (See *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1543.) " 'In other words, the presence of malice must be established by other, additional evidence.' [Citation.]" (*Ibid.*) Such other evidence is not limited to actual hostility or ill will, but also includes proceedings instituted primarily for an improper purpose, including when: " '(1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no

12

relation to the merits of the claim.' [Citation.]" (*Ibid.*, internal quotation marks omitted.)

Larsen argues that Sacor acted with malice because it pursued enforcement of the default judgment without investigating the "factual tenability" of the *underlying* action and "stonewall[ed] any attempt to obtain documentation." But as the trial court noted, there is no evidence that Sacor had any role in initiating the underlying action or obtaining the default judgment. Sacor was merely an assignee of the judgment after the fact. As an assignee of the judgment, Sacor had no obligation to investigate the merits of the underlying claims against Larsen before attempting to enforce the default judgment entered against him. A default judgment is not invalid just because the underlying claims may have been lacking in merit. And there is neither circumstantial nor direct evidence that Sacor acted with an improper purpose in seeking to preserve the default judgment, or knowingly sought to enforce a judgment it knew was invalid.[5] (*See Padres*, *supra*, 114 Cal.App.4th at p. 522.)

Sacor's conduct after the judgment was set aside further undercuts any inference of malice. Less than two months after receiving discovery requests,

---

[5] Although we need not decide whether Sacor or NCA had probable cause to maintain or seek enforcement of the *underlying* action, we note Larsen does not dispute that the credit report Sacor relied on lists two different social security numbers, along with the names "Bruce E Larsen" and "Erick B Larsen" as aliases. The credit report includes an address that matches NCA's documentation of the credit account at issue, and Larsen confirmed in his declaration that he previously maintained a private post office box at that address. The report also shows that someone with Larsen's name was associated with a business called "United Diamonds," and Larsen stated in his declaration that he used to work as a jewelry designer. That Sacor relied on this report, which has some indicia of factual accuracy, undercuts Larsen's malice argument.

and just three weeks after the denial of its motion to vacate the order setting aside the judgment, Sacor voluntarily dismissed the underlying action. Given the relatively short time period that elapsed between when Larsen issued discovery requests and when Sacor requested dismissal, there is no evidence that Sacor was "stonewalling" the discovery process to the extent that would evidence malice. (Cf. *Roche v. Hyde* (2020) 51 Cal.App.5th 757, 815 [finding evidence of malice where a party withheld a key document "for more than four years based on shifting positions, none of which had any substance, and by treating document discovery as if it were a shell game"].) The reality is that Sacor did nothing to prosecute the underlying action against Larsen after its unsuccessful efforts to preserve the default judgment.

Ultimately, it is Larsen's burden to show a probability of success on his malicious prosecution claim, and unlike in other cases where courts have found a sufficient showing of malice, Larsen has produced no evidence that Sacor had an improper purpose in seeking to preserve and enforce the default judgment. (See, e.g., *Soukup*, *supra*, 39 Cal.4th at p. 296 [evidence of malice included physical threats and intimidation]; *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 225 [concluding the record "clearly supports an inference that" defendant brought underlying case with malice because "his personal relationship with and alleged threats to" plaintiff suggested his subjective intent "may have been to exact revenge"]; *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218 [malice "can exist, for example, where the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim"]; *Padres*, *supra*, 114 Cal.App.4th at p. 522 [plaintiff proved malice where defendant repeatedly filed actions in order to interfere with a business project].)

14

Because Larsen has not met his burden of showing a probability of proving that Sacor acted with malice, we need not reach the merits on the remaining elements, nor do we need to decide whether the court erred in overruling Larsen's objections to declarations which are irrelevant here and did not form the basis of the trial court's ruling.  We therefore conclude that the trial court correctly granted Sacor's anti-SLAPP motion and did not err in awarding attorney fees to Sacor as the prevailing party.

DISPOSITION

The orders granting Sacor's anti-SLAPP motion and awarding Sacor attorney fees are affirmed.  Sacor shall recover its costs on appeal.


BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.